## FARMERS STATE BANK *v.* KELLEY.

1. If the complaining party has introduced the greater number of witnesses, an omission to tell the jury in effect that they may take into consideration that the greater number of witnesses testified in favor of one party rather than the other, though the preponderance is not necessarily with the greater number, might be harmful error and warrant the grant of a new trial; but where, as in the instant case, the movant for new trial had introduced only three witnesses and the prevailing party had introduced nine witnesses, the omission to so charge must be treated as harmless.

2. Any instruction which tends to unduly hasten the jury in the consideration of a case is generally ill-timed and inappropriate; but it does not appear that it was error in this case on the part of the trial judge to observe, in the course of his charge: "This is a simple case and a simple question of fact, and the court does not want to hurry you in your deliberation. Being a simple question of fact, you should be able to conscientiously arrive at the truth of this case, and I hope you will be able to do so in a short while. With these instructions you may retire and make your verdict." Especially is this true since this court, in a prior review of the pleadings and evidence in this case, had ruled that there was only one issue in the case and that issue one of fact.

3. The only real issue raised by the evidence in the trial now under review was whether Sheldon E. Kelley was mentally capacitated to execute the assignment as he did six days before his death. There was sufficient evidence tending to show that he was not mentally capable of executing the contract in question at that time, to authorize the finding of the jury.

No. 6406.  AUGUST 15, 1928.

Equitable petition. Before Judge Camp. Lincoln superior court. December 10, 1927.

*Burnside & McWhorter,* for plaintiff in error.

*F. H. Colley, M. L. Felts,* and *Homer Legg,* contra.

RUSSELL, C. J. This is the third appearance of this case before this court; and as appears from the record it is the third concurrent verdict in favor of the plaintiff in the trial court. Upon the first appearance of the case in this court, a motion for a new trial filed by the bank having been overruled, the judgment of the lower court was reversed. *Farmers State Bank* v. *Kelley,* 155 *Ga.* 733

(118 S. E. 197). In that decision is contained a statement of the facts, which varies only in slight particulars from the evidence in the record now before us. Such additional facts will be referred to hereinafter. The plaintiff's right of action was established by the judgment, affirmed in 155 *Ga.,* supra, overruling the general demurrer to the petition. We held then that the petition set forth a cause of action for cancellation of the assignment to the bank of the policy of insurance. We held also that the wife was not estopped from attacking the validity of the husband's assignment, upon the grounds stated in the petition, because of the fact that she had joined him in the assignment. The judgment refusing a new trial was reversed upon the sole ground that the record then before us contained no proof to establish the lack of mental capacity on the part of the insured to execute the assignment, and therefore the court erred in directing a verdict for the plaintiff. The case was tried again, and, resulting in another verdict for the plaintiff, it appeared here for the second time, 159 *Ga.* 280 (125 S. E. 467), and the judgment refusing a new trial was again reversed because of an error in the charge of the court. The court in that trial charged: "The burden of the case would then shift to the defendants, and it would be on them then to show to your satisfaction, before you would be authorized to find for them, the plaintiff having carried the burden, that Mr. Kelley was of sound mind, that he was capable of contracting, that he knew what he was doing, what disposition he was making of his property; and if they show that to your satisfaction and overcome the burden which was upon the plaintiff in the case, then you would be authorized to find for the defendant, and in that event it would mean that the transfer or assignment of the policy would not be canceled." This court was of the opinion that the charge complained of put a greater burden upon the defendant than the law required, inasmuch as the answer of the defendant was a mere denial of the allegations contained in the petition upon which the plaintiff based her right to recover, the defendant not setting up any affirmative defense.

1. In the case now sub judice the motion for a new trial contains, in addition to the usual general grounds, only two special exceptions. Complaint is made that the court, in quoting section 5732 of the Civil Code of 1910, as to circumstances which may be considered in determining where the preponderance of evidence lies,

omitted the provision in that section that "The jury may also consider the number of witnesses, though the preponderance is not necessarily with the greater number." In the assignment of error it is said: "Movant insists that said charge above quoted was correct so far as it went, but the court did not give the full and complete charge of the law upon the subject of determining the preponderance of the evidence, as set out in section 5732 of the Civil Code (1910), and for that reason said charge was error and harmful error to the movant." Upon examining the brief of evidence we find that nine witnesses were introduced by the plaintiff and testified in her behalf, while only three were introduced and testified for the defendant, the plaintiff in error. Cases may arise (and especially if the complaining party has introduced the greater number of witnesses) in which an omission to tell the jury in effect that, all other things being equal, the jury may take into consideration that a greater number of witnesses of equal credibility testified in favor of one party rather than the other, though the preponderance is not necessarily with the greater number, might be harmful error and warrant, if it did not require, the grant of a new trial. It has been so held, in *Hinson* v. *Hooks, 27 Ga. App.* 430 (108 S. E. 822). However, it is difficult to perceive that the omission of this instruction, under the facts of this case, could have been other than beneficial to the defendant; and it must be assumed that if the clause now under consideration was purposely omitted by the court, it was in order to prevent any prejudice to the party who had only three witnesses while its antagonist had presented three times that number, who had testified in her favor. We are not prepared to hold that in any such instance as that now before us the omission of that portion of section 5732 which relates merely to the number of witnesses testifying in a case would be cause for reversal.

2. The second special ground of the motion for new trial complains that the court charged the jury as follows: "This is a simple case and a simple question of fact, and the court does not want to hurry you in your deliberation. Being a simple question of fact, you should be able to conscientiously arrive at the truth of this case, and I hope you will be able to do so in a short while. With these instructions you may retire and make your verdict." The movant insists that this charge was error, "for the reason that

when all papers in the case were turned over to the jury there was written on the back of the original petition two verdicts of former juries finding adverse to the contentions of movant, and the verdict of the jury now complained of is likewise written on the back of said original petition." It is alleged to be specially harmful and erroneous, because the court instructed the jury that "this is a simple case and a simple question of fact," etc., and because the judge told the jury in effect that he hoped they would be able to find a verdict in a short while. We fail to apprehend any connection between the two reasons which are assigned as error, or what connection existed between the fact that the former verdicts were not covered and the fact that the judge stated that the case presented only a simple question of fact. Any instruction which tends to unduly hasten the jury in the consideration of a case is, in our opinion, ill-timed and inappropriate. But it does not follow that a suggestion to the jury that there is only one simple issue in the case, from which it would follow that the time to be consumed would be much shorter than if there were a number of issues to be determined, is harmful to either party, and certainly no inference can be drawn that it is more harmful to one of the parties than to another. If they did not apprehend the reason for the statement of the judge, as we have just stated, they certainly would not be authorized to infer that his desire for speed was intended to prejudice one of the litigants rather than the other. In stating that there was only "a simple question of fact" involved, the trial judge only repeated the ruling of this court in this case (159 *Ga.* 280, supra), where it was held that the sole issue in the case is whether or not Sheldon E. Kelley, at the time he made the assignment of the life-insurance policy, was in mental condition to conduct or transact business, or whether his mind had become impaired and deranged. As to the verdicts of two former juries being on the back of the original petition, it was within the power of the defendant to request that these verdicts be so covered that they could not be read by the jury; and had this request been made and refused, a different question would be presented. In the absence of any showing that such request was made or that the attention of the court was called to the fact that the jury could see these two verdicts, it must be assumed that able and experienced counsel, though cognizant of the fact that they would be seen by the jury unless the entries were

temporarily removed from the petition or were so covered as to leave the jury in ignorance of their contents, were of the opinion either that the membership of the public generally from which the jury had been drawn were so well aware of the findings of the previous juries that the entries would not add to the jury's knowledge of their contents, or that the request that the two prior verdicts be withdrawn from the view of the jury would be more prejudicial to the interests of their clients than beneficial.

3. The only real issue raised by the evidence in the trial now under review was as to the mental capacity of Sheldon E. Kelley to execute the assignment, as he did six days before his death. While we granted a new trial upon the first appearance of this case, because there was no evidence upon that subject to warrant a verdict for the plaintiff, an examination of the evidence adduced in the trial now under review discloses ample evidence to authorize the jury to find that Sheldon E. Kelley was not competent, at the time referred to, to attend to any business of importance or to execute any contract conveying property rights. G. P. Bennett swore that he knew Sheldon Kelley from the time he was a baby until he died, and that some time before his death his health was "awfully bad." He went to pieces physically, and his mind seemed to weaken with his body. He did things that a balanced man would not do. Witness was with him during his last illness, and left his home in the morning, and he died that night. At that time the condition of his mind was bad. He was up at the store a short time before he was taken sick, and he would cry, and said he wanted to kill himself and get out of the way. The witness stated other facts and circumstances, including a trade with regard to horses, and Kelley's going off and staying several days away from his family, with neglect of his family and business; and testified: "From all these facts that I have detailed I would say that his mind was off. He was not in a position to attend to business at all." On redirect examination this witness testified: "His mind was all to pieces, and so was his body. He was not able to help himself. If you opposed him while he was sick, you would tear him to pieces." Dr. E. R. May, a practicing physician, testified that Kelley was suffering with a constitutional trouble the year before he died, and he seemed to be in bad shape physically and mentally. In his last illness he had pneumonia. He was very much emaciated before he

was stricken. Witness did not know what the constitutional trouble was that affected him. His mental condition seemed to be very poor, and he was abnormal. Witness noticed his expression and symptoms. Kelley had practically no expression. From witness's knowledge of his previous condition and observation of him during his last illness, witness did not think his mind was good. On cross-examination this witness testified that Kelley's condition in his last illness was such that he was in a sort of stupor—not exactly a stupor—but he was not normal then or before. Of course the pneumonia made his mental condition worse than it was. "As to whether I could say that he did not have sufficient mental capacity to transact business before he got the pneumonia, just to be plain with you, I would not want him to attend to any business for me. I do not feel like I would want him to transact any business for me, on account of his mental condition, either in the November previous to his death or just before his death in January."

Dr. W. H. Estes testified that he had known Sheldon E. Kelley for twenty years or more; had seen him occasionally for twenty years; saw him about two months before his last illness; never a year but witness was in his family. The last year or so before his death there was considerable change in his mental condition. Witness noticed a change something like a year before Kelley's death. "That progressed. When I saw him a couple of months before his last illness, his mental condition was very bad. His mental condition then was such that it was simply impossible for him to make a contract or to understand the nature of a contract. . . Knowing his physical condition and the trouble with which he was affected, I would say that two or three months before his death he was unable to contract. Based on my knowledge and judgment as a physician, that condition grew worse until his death. Based upon my knowledge of his mental and physical condition, I am sure he did not understand the nature of the contract which he made just a few days before his death. Based on what I know of his mental and physical condition, I doubt seriously if in a period of two or three weeks before his death he would have had lucid intervals where he would understand a contract." There was testimony similar to that just referred to, from a number of witnesses; so that it can not be said that the jury was not authorized to find, in case they believed the witnesses for the plaintiff, that Sheldon E.

Kelley was not competent, on January 9, 1922, to make the assignment of the policy of insurance on his life, which was the only issue in the case. We can not hold, therefore, that the court erred in overruling the motion for new trial based on the ground that the verdict was contrary to the evidence.

*Judgment affirmed. All the Justices concur.*