BUTLER *v.* STATE.

(*Nashville*, December Term, 1947.)

Opinion filed January 16, 1948.

Solon Fitzpatrick, of Carthage, for plaintiff in error.

J. Malcolm Shull, Assistant Attorney-General, for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

Plaintiff in error, Joe Butler, hereafter called defendant, was indicted for assault with a rock upon Thomas Hughes with the intent to commit murder in the first degree, the indictment being predicated upon Code, Section 10797. The Court in its charge and of its own motion submitted to the jury only the question of whether the defendant was guilty of assault with intent to commit

688

voluntary manslaughter or any less offense necessarily embraced therein.

 Defendant appeals from a conviction of assault with the intent to commit voluntary manslaughter. He was given a fine of $250.00 and sentenced to jail for six months. While various reasons are relied upon for reversal, the principal insistence, as we understand it, is that there is no evidence that Hughes, the person assailed, was struck with a rock, and that, therefore, the case must be reversed under the authority of *Witt* v. *State*, 46 Tenn. 5, 8. Hughes was unable to testify because of a previous judgment of infamy. Consequently his brother, who did not witness the affair, was prosecutor.

The difficulty occurred around 5 o'clock in the afternoon at a beer tavern of McCullen, a witness called by the State. Defendant and his witnesses had each imbibed several bottles of beer since 1 P. M., and defendant admits that he "was drinking" at the time. When they reached this tavern the three companions of defendant entered. Very shortly thereafter defendant entered and about that time McCullen noticed Thomas Hughes lying unconscious in front of the place and asked the defendant who hit him. The defendant said that he hit him and gave as his reason that "I just didn't like what he said to me". McCullen says that he then "I got Thomas (meaning Hughes) inside and was trying to—". Here he was interrupted, and next testified that at that time he saw defendant hit and knock unconscious on the outside a boy by the name of Price. Price was summoned as a witness, but did not appear, as, in cases of this character, so often occurs. As McCullen was bringing the body of Hughes inside he noticed a rock as "big as my fist lying there" where Hughes' body was found out in front. The

front of McCullen's place is paved from the entrance to to the building for the entire distance to the highway. The rock was, therefore, brought by someone to the place where it was found beside the body of unconscious Hughes. There was a wound a little above and behind the right ear of Hughes. While still unconscious he was taken to the hospital, and remained there four or five days. He was then taken home and remained in bed for a week. The doctor who attended him was out of the State at the time of the trial.

The defendant's version of the matter is that he met Hughes coming out of the beer tavern as he was going in and that Hughes without any provocation called him a vile name, and that when he protested Hughes inquired what he intended to do about it and ran his hand in his pocket. Thereupon, defendant says, he hit him in the mouth with his fist ''because he asked me what I was going to do about it.'' The undisputed evidence establishes it as a fact that there were no bruises or cut places on the mouth of Hughes or anywhere around the front part of his face. Defendant denies that Hughes was hit with a rock and disclaims any knowledge of the rock found beside his body. The three companions of defendant furnish negative testimony that they did not see the rock or difficulty, being in the tavern at the time the difficulty occurred on the outside. Some facts were developed on the cross-examination of these witnesses which the jury might very well view as casting some doubt as to the credibility of at least some of these three witnesses. The defendant likewise denies hitting the Price boy.

The evidence establishes it beyond doubt that Hughes was struck by the defendant from behind or partly behind and that the blow inflicted was very severe and that

beside or practically beside his body was a rock as big as a man's fist which had necessarily been brought there by some one. The utmost of defendant's claim is that he hit Hughes "because he asked me what I was going to do about" him calling defendant the epithet above mentioned. The admitted assault was extremely vicious, as evidenced by its effect, and unwarranted either in fact or law. If Hughes had died this defendant would have been guilty under this indictment of nothing less than voluntary manslaughter, and hence guilty here of the assault with intent to commit voluntary manslaughter, unless the insistence of defendant that there is no evidence that a rock was used in making this assault is well taken.

Perhaps counsel, in urging upon us that there is no evidence of the use of a rock in making the assault, has either overlooked or failed to give proper value to the well settled rule stated in *Thompson et al.* v. *State*, 171 Tenn. 156, 160, 101 S. W. (2d) 467, 468, in this language: "It is well settled that 'all of the elements constituting the *corpus delicti* may be proven by circumstantial evidence.'" The experiences and common observation of man establishes it as a fact that the severity of this blow was much beyond that which would be inflicted by a lick with the fist. It follows necessarily that some weapon other than the fist was used in inflicting this blow. Beside the body of the person assaulted was a rock which did not belong there and the presence of which can only be explained by the fact that it was brought there. These facts and circumstances make necessary the conclusion that the weapon used by the defendant in making this assault was that rock. The result of this conclusion is to overrule the insistences directed to the preponderance of the evidence.

 Considered in logical order, the next insistence is that the Court was in error in permitting McCullen to testify about the defendant hitting the Price boy very shortly after he had assaulted Hughes. We are inclined to think that this evidence was competent as a part of the *res gestae*, but we find it unnecessary to consider and determine that in view of Code, Section 10654 which forbids a reversal on the ground of error in the improper admission of evidence unless it shall affirmatively appear that the error in question affected the result. It does not affirmatively so appear in record. In fact, we are satisfied that had this evidence been excluded, still the jury would have returned the same verdict and assessed the same punishment. The Court instructed the jury that the alleged assault upon Price could only be looked to as illustrating defendant's frame of mind. That frame of mind was fully illustrated in the assault he made upon Hughes. It must not be overlooked that the practically undisputed evidence is that the assault upon Hughes was very vicious and unwarranted, and its effect came near to fatality.

 The next alleged error is in the failure of the Court to charge as requested by the defendant that it would be the duty of the jury to return a verdict of not guilty unless it found beyond a reasonable doubt that the defendant assaulted Hughes with a rock. The Court correctly charged the jury as to reasonable doubt and told the jury that moral certainty was required adding this instruction, to-wit: "And that certainty is required as to every proposition of proof requisite to constitute the offense and as to every grade of crime charged or included in the indictment". He then charged the jury that it must appear to it "beyond reasonable doubt before the defendant can be convicted, first, that the defend-

ant at the bar committed an assault upon the person named in the indictment and substantially as charged therein''. It was charged in the indictment that the assault was made with a rock. This no doubt was the reason the Court declined this request for special instruction. As noted by the Trial Court it had already been ''sufficiently charged''.

■ What has just hereinabove been said equally applies to the insistence that the Court committed error in failing to charge the jury that it could not convict the defendant unless it ''be proven beyond a reasonable doubt that the defendant intended to kill Thomas R. Hughes''. Included in the indictment was the charge that defendant assaulted Hughes with the intent to commit voluntary manslaughter. As above noted, the Court instructed the jury that it must be satisfied beyond a reasonable doubt that the assault was made ''substantially as charged'' in the indictment. The language of the charge in this case is that which has long been recognized as correct. As we understand it, counsel do not insist that the charge was incorrect, but in substance say that it was meager on the question of necessity of intent. We do not think so. However, in *Chamberlain* v. *Lee*, 148 Tenn. 637, 646, 257 S. W. 415, 418, the Court in discussing a like situation said: ''If it was desired that the instructions should be supplemented, a corrected request must have been framed''. There was no request in this case for such special instruction. In *Powers* v. *State*, 117 Tenn. 363, 371, 97 S. W. 815, 817, it is said, ''in the absence of a special request, we do not think that his failure to give more liberal instructions upon this subject could be treated as reversible error''.

■ When the jury returned into Court for the sec-

ond time and reported that they had not agreed on a verdict the following colloquy was had:

"The Court: You haven't been able to reach an agreement; are you disagreed on guilt or innocence or on punishment?

"Spokesman: Punishment; we have agreed on guilt or innocence.

"The Court: Well, I am going to let you stay together until you have plenty of time to give the matter consideration. I hate to keep you together over night, but you haven't had the case very long and you are not far apart, and I believe I'll let you go in the jury room and work on it a little while longer. I don't want to keep you all night if I can help it."

The jury retired and at some unfixed time thereafter returned with the verdict and punishment heretofore stated. This inquiry of the Court to the jury is assigned as error on the ground that to then send the jury back for further consideration "coerced or influenced the jury to bring in a verdict of guilty".

Counsel is clearly mistaken in his insistence that it "coerced or influenced" the jury "to bring in a verdict of guilty". The record shows that in response to this question of the Court, the jury through its spokesman replied that it had already agreed on the guilt of the defendant but was in disagreement as to the punishment. We treated this statement of counsel as actually intending to mean that it coerced the jury into agreeing as to the amount of punishment. In the case of *Taylor* v. *Jones*, 39 Tenn. 565, the jury was told by the Court that he must "keep them together until they could agree, telling them that he could remain here until the fourth Monday in next month". That was clearly coercion, and this Court so held and reversed the case. In doing so,

however, the Court made this observation: "It is the duty of a jury to make every possible effort to agree upon a verdict, and not improper in the court to urge them to do so, that the litigation may be speedily terminated". Measured by this declaration, the remarks of the judge in the instant case are not subject to criticism. It is the presence of coercion which makes objectionable the remarks of the Court to the jury by telling its members that they will be kept together for some undue length of time unless prior thereto a verdict is agreed upon. That was the controlling point of the Court's ruling in *Taylor* v. *Jones, supra,* cited in defendant's brief and above referred to. Our own investigation revealed a ruling to the same effect in *Chesapeake, Ohio & Southwestern Railroad Co.* v. *Barlow,* 86 Tenn. 537, 8 S. W. 147, and *Parrish* v. *State,* 80 Tenn. 655. The communicated threat in each of these cases to hold the jury for such an undue length of time was coercion.

In the instant case the remarks of the judge clearly indicate that the hour of adjournment of court for the day had arrived and that the case had been under consideration by the jury for only a short while. In this situation and in the interest of disposal of business, it would have been the duty of the judge, in the event of adjournment, to hold the jury over night. His failure to do so could very well and probably would have invoked the objection of the defendant (*Bellis* v. *State,* 157 Tenn. 177, 7 S. W. (2d) 46) had the defendant not then been aware that the jury had already agreed that he was guilty, but had not agreed to his punishment. So, the judge out of a generosity of consideration for the jury and realizing that the jury was not far from agreement expressed an intention to let the jury consider the one remaining question "a little longer" before adjourning.

The California case of *People* v. *Haacke*, 34 Cal. App. 516, 168 P. 382, as annotated in 85 A. L. R., page 1446 is somewhat in point. There the Court, after observing that he took it to be a good sign that they were still working at the verdict and had not concluded that they could not agree, said that he would be in court until 9:15 and would accept the verdict if they had agreed. The Court rejected the insistence that this was a threat to keep the jury in the jury room all night unless they reached a verdict by 9:15. The Georgia case of *Farmers' State Bank* v. *Kelley*, 166 Ga. 683, 144 S. E. 258, 260, is perhaps also similar. In that case the remark of the Court objected to and held not to be objectionable was: "This is a simple case, and a simple question of fact, and the court does not want to hurry you in your deliberation. Being a simple question of fact, you should be able to conscientiously arrive at the truth of this case, and I hope you will be able to do so in a short while."

We are of the opinion that there is no element of coercion, even by way of implication, in the remarks which the Court made to the jury in this case. The Court did not threaten to keep them together for an undue length of time. The assignment of error directed to that proposition must, therefore, be overruled.

Affirmed.

All concur.