# OLSON v. SHARPE et al. — 259 S. W. (2d) 867.

Eastern Section.   January 8, 1953.

Petition for Certiorari denied by Supreme Court, June 5, 1953.

558

560

E. Bruce Foster, of Knoxville, and Frank Wilson, of Oak Ridge, and J. W. Mills, of Knoxville, for William L. Olson.

R. R. Kramer, R. Arnold Kramer, Erma G. Greenwood and Curtis L. Wagner, Jr., all of Knoxville, for Bridges Paving Co.

Poore, Cox, Baker & McAuley, of Knoxville, for Edward Sharpe and J. D. Phillips.

Hodges & Doughty, of Knoxville, for Moran Trucking Co.

McAMIS, J.  This action was instituted in the Circuit Court of Anderson County December 19, 1949, by William L. Olson against Edward D. Sharpe, J. D. Phillips, Moran Trucking Company, a partnership composed of Cleo Moran and Guy Moran, and Bridges Paving Company to recover damages in the sum of $100,000 for personal injuries sustained as the result of being struck by a truck operated by the defendant Edward D. Sharpe on September 23, 1949.  The case was tried before the court and a jury and resulted in a verdict in plaintiff's favor for $100,000 against Bridges Paving Company and a general verdict in favor of the other defendants which was accompanied by special jury findings absolving plaintiff of contributory negligence and the defendants Sharpe, Phillips and Moran Trucking Company of negligence.  The jury also found specifically that the proximate cause of

plaintiff's injuries was the negligence of Bridges Paving Company in failing to provide a flagman for trucks engaged in a backing movement on the construction project in Oak Ridge, Tennessee, where plaintiff was injured.

Judgment was rendered in accordance with the verdict. Plaintiff thereupon moved for a new trial as to the defendants Sharpe, Phillips and Moran Trucking Company, insisting there was no material evidence to sustain the verdict in their favor, and Bridges Paving Company moved for a new trial, insisting among numerous other grounds that a verdict should have been directed in its behalf at the close of plaintiff's evidence at which time it stood upon its motion for a directed verdict and announced that it would not be bound by any evidence thereafter introduced. Both motions were overruled and the plaintiff and Bridges Paving Company have perfected appeals in error to this Court where both have assigned numerous errors.

We consider first the assignments of Bridges Paving Company, noting that the greater number of its assignments deal with the issue of the inherently dangerous nature of its operation which, plaintiff insists, deprived it of the right to rely upon the defense that the injury was inflicted by an independent contractor and the question of the liability of Bridges Paving Company for the acts of its codefendants under the doctrine of respondeat superior. We find that the questions raised by such assignments have become immaterial in view of the special findings of the jury.

On September 23, 1949, and for more than a year prior thereto plaintiff Olson, 31 years of age and a graduate engineer, was in the employ of Merritt-Chapman & Scott, a general contractor holding a prime contract from the Atomic Energy Commission for the performance of cer-

tain construction work in Oak Ridge. Ross Construction Company had a subcontract for a part of the work and it in turn subcontracted to the defendant Bridges Paving Company the laying of an asphalt pavement on Road 101 in the Oak Ridge area. Prior to the date of the injury, Moran Trucking Company had contracted with Bridges Paving Company to haul by truck hot asphalt from the mixing plant of Bridges Paving Company to the paving operation, a distance of about one mile. Phillips was engaged by Moran Trucking Company to furnish four trucks and four drivers to assist in the performance of the hauling contract of Moran Trucking Company and they were so engaged at the time of the injury to plaintiff. Sharpe, the driver of the truck which struck plaintiff, was employed by Phillips. The status of Phillips in relation to Moran Trucking Company, whether that of an independent contractor or agent and employee, is a controverted issue.

On the day of the accident plaintiff, in company with another engineer, Mr. McTurk, and Hubert C. Roberson and in line of duty, went upon a parking lot for Apartment 30, where Roberson was engaged in a grading operation, to locate the cause of a "soft spot". Adjoining the parking lot and running generally east and west was Road 101 then in the process of being paved by Bridges Paving Company. After inspecting the "soft spot" it was surmised that the cause might be found by inspecting underground pipes running from beneath Road 101. The three men then left the parking area which was approximately six feet above the street level and, after stopping at a manhole cover located at the inside edge of the sidewalk, proceeded to the curb to inspect a curb inlet. To remove the iron grating weighing approximately 200 pounds plaintiff took up a position at the west of the

inlet, facing east, and Roberson a position on the east facing west. They pushed the lid to the west of the inlet and while plaintiff was in this position looking down for the purpose of inspecting the pipes within the inlet to determine their direction in relation to the parking area, Phillips' truck, driven by Sharpe, and being backed up-grade loaded with 7½ tons of asphalt, struck him in the back of the head, knocking him to the pavement and, despite all his efforts to escape, his feet and legs became engaged in the axle of the truck turning his body in a reversed somersault. Efforts by Roberson and McTurk to have the driver stop the truck were unavailing until it had passed almost over plaintiff.

It appears that the paved portion of Road 101 when completed was to be 27 feet in width. Prior to the time in question, Bridges Paving Company had put down two strips of asphalt each 9 feet in width along the south side of Road 101 and had moved its asphalt machine beyond the top of a slight hill a distance of approximately 1,000 feet east of the curb inlet mentioned for the purpose of paving the north strip from east to west. Because the heavily loaded trucks could not be operated upon the newly laid asphalt on the south side of the Road, loaded trucks were being brought into a parking area some 200 feet west of the inlet where, immediately preceding the accident, three of Phillips' trucks had been waiting for 15 or 20 minutes until the asphalt machine could be set in position. When this was accomplished a truck driven by Cox backed out of the parking lot and upon the un-paved portion of the road from which point it was backed, according to the contention of Bridges Paving Company, to a point east of the inlet before plaintiff was struck by the truck driven by Sharpe.

When Sharpe had backed his truck out of the parking lot and into the unpaved strip on the north side of Road 101, he opened the left door and either from a position standing on the left fender or looking out of the cab, was watching the left rear wheel of his truck to avoid encroachment upon the new pavement. According to all the evidence his line of vision enabled him to see to the east from a point 25 or 30 feet behind the truck along the edge of the pavement. He could not see an object behind the right rear of his truck. According to all the evidence, neither Moran, Phillips nor Bridges Paving Company provided a flagman or watchman in connection with the backing operation of trucks although the general area of the operation was a construction area with machines and drills making loud noises and workmen were known to be congregated in the area and pass at frequent intervals from one job to another on the opposite sides of Road 101. According to the evidence most favorable to the plaintiff, the Sharpe truck was being operated at a speed of 5 or 6 miles per hour.

Plaintiff testified that as he approached the inlet he looked to the west and saw a barricade across Road 101. He saw no trucks and, although he knew the street was under construction, he did not know the location of the asphalt machine. He had been at the inlet in the position described only about 1½ minutes prior to being struck. Neither he, McTurk nor Roberson observed the approach of the Sharpe truck and, if it had passed as Cox testified, neither observed the Cox truck, due, it is insisted by plaintiff, to the noise of other machines, concrete drills, and other operations going on in the area.

■■ Remembering as we must that with the jury and trial judge rests the burden of determining purely fact questions when diverse inferences from the evi-

dence are reasonably possible, we cannot agree that there is, necessarily, a direct and positive inconsistency in the findings of the jury that Phillips and Sharpe were guilty of no negligence and that the proximate cause of the accident was the negligence of Bridges Paving Company in not providing a flagman.

Phillips was engaged to furnish four trucks with drivers and, so far as appears, he was not paid to do anything more. His part of the operation was entirely subsidiary to the general operations being carried on by Bridges Paving Company. `He had no control over which side of the road would be paved first, having regard to available turning places for trucks or where, at any given time, the paving machine would be located. Truck drivers were expected to deliver asphalt when needed and dump it where and as directed by Bridges Paving Company. Phillips had no control over the general area. Bridges Paving Company did, or so the jury may have found from the evidence. There is evidence that, at other times, a laborer at the paving machine would act as flagman and assist in backing trucks into the machine. It might reasonably be inferred that in this instance this could not be done because, due to the placing of the machine and the resulting long backing movement, employees of Bridges Paving Company at the machine were too far away to serve as flagmen. Its liability, therefore, might have been found not joint and equal but individual and personal. While we might disagree with the finding of the jury that Sharpe violated no duty to persons in the area of his operations by proceeding to back his truck without warning, the jury has found that the proximate cause of the accident was the failure of Bridges Paving Company to provide a watchman or flagman for the area. That was essentially a question of fact falling within the province of

the jury and because the jury exonerated Sharpe of the charge of negligence would not warrant an appellate court in relieving Bridges Paving Company of the consequences of another independent act of negligence personal to it which, we think without question, could be found to be the proximate cause of plaintiff's injuries.

When properly analyzed, the opinion of Chief Justice Neil in D. B. Loveman Co. v. Bayless, 128 Tenn. 307, 160 S. W. 841, strongly relied upon by Bridges Paving Company in this case, is in accord with this view. In that case the Court stated the general rule to be that when the master is sued solely for injuries resulting from the act of his servants, being liable for their conduct only under the doctrine of respondeat superior, a verdict, permitted to stand in favor of the servants, entitles the master to a discharge from such claimed liability. Numerous cases are cited in support of the rule at page 313 of 128 Tenn., at page 843 of 160 S. W. of the opinion. However, the court then said: ''If the evidence shows liability of the master on grounds other than the misconduct of his servants, he may be held, notwithstanding a verdict in favor of the servant. This principle was recognized in Jones v. [City of] Seattle, 51 Wash. 245, 98 P. 743; Aldrich v. Inland Empire [Telephone & Telegraph] Co., supra [62 Wash. 173, 113 P. 264], and Clay v. Chicago, Milwaukee & St. Paul Railway Co., 104 Minn. 1, 115 N. W. 949. In the case last cited there were two grounds of liability considered, the too great proximity of the depot platform to the passing cars, and the negligence of the conductor. The jury rendered a verdict in favor of the conductor, but the court held this did not entitle the railway company to a discharge, since the other claim of liability remained for the jury to pass on as affecting the company's liability.''

The case was before the Supreme Court to review a judgment of the Court of Civil Appeals sustaining the insistence of Loveman Company that it was discharged under the general rule. The Supreme Court held that, since there was no assignment of error that there was no evidence to sustain the verdict of the jury, the Court of Civil Appeals erred in reversing the judgment, on the theory that if the courts on appeal could look to the evidence it might be found that Loveman Company might be liable for the acts of two other agents who were not sued. Accordingly, the judgment of the Court of Civil Appeals was reversed and that of the trial court approving a verdict against Loveman Company affirmed. Cf. Layne v. Campbell, 31 Tenn. App. 651, 219 S. W. (2d) 917.

"If the liability of the master is not predicated solely upon the negligence of the employee in whose favor a verdict has been found, but upon the negligence of another employee, or that of the employer himself, a verdict against the employer is not inconsistent. A verdict in favor of an employee does not bar recovery against the employer where the latter has himself been guilty of acts on which, independently of acts of the employee, liability may be predicated. In other words, if the liability is that of joint tort-feasors, then a judgment may be entered in favor of the employee and against the employer." 35 Am. Jur. 963, Master and Servant, Section 534.

Cases in accord include Webster v. Chicago, St. P., M. & O. R. Co., 119 Minn. 72, 137 N. W. 168; Kiye Konno v. Northern Pacific Railway Co., 127 Wash. 607, 221 P. 318; Green v. Southern Pacific Co., 53 Cal. App. 194, 199 P. 1059, 1062.

In the case last cited the facts were not unlike those presented in this case. In that case the plaintiff sued the Railway Company and its engineer in charge of a train

which backed upon a crossing at night without a rear light or flagman. The jury exonerated the engineer but found against the Railway Company. The Court found that the verdicts were not inconsistent, saying:

"In view of these principles, and the negligence pleaded and proved in this action, we conclude that the verdict in favor of defendant Brown, does not bar the right of recovery against appellant. In their report to the company, the trainmen themselves said that the accident could have been avoided 'if there had been a flagman stationed at the crossing.' "

It is insisted, however, that the court erred in overruling the demurrer to the amended declaration asserting for the first time and after the lapse of one year following plaintiff's injuries that, in addition to acting by and through its servants and agents, Bridges Paving Company was guilty "individually" of all the acts charged under the doctrine of respondeat superior in the original declaration. It is said this was an attempt to set up a new and different cause of action barred by the statute of limitations of one year.

While we have found no authority directly in point, the generally accepted criteria for determining when, in relation to a period of limitations, an amendment to the complaint introduces a new cause of action sustain the view of the trial judge. The facts relied upon to sustain a recovery under both pleadings are the same, the same evidence would be admissible under both, and a recovery under either would bar a recovery under the other. See Tennessee Procedure in Law Cases (Higgins & Crownover) Sec. 789.

A number of cases including Barnes v. Fort, 181 Tenn. 522, 181 S. W. (2d) 881; Delaney v. Delaney, 190 Tenn. 632, 231 S. W. (2d) 328 and Williams v. Cravens, 31 Tenn.

App. 246, 214 S. W. (2d) 57, hold that unless a new cause of action is introduced the amendment relates back to the original complaint and, Love v. Southern Railway Company, 108 Tenn. 104, 65 S. W. 475, 55 L. R. A. 471, that an amendment changing the capacity in which the suit is brought does not constitute a new cause of action in the sense of the rule. These cases establish a more liberal policy designed to effectuate the ends of justice and we believe the same principles should govern in the present case.

■ It is also insisted the court erred in permitting plaintiff to plead and prove safety regulations of the Atomic Energy Commission for the Oak Ridge area, on the theory that the contract under which Bridges Paving Company was operating imposed upon it the observance of such regulations. We need not decide the question. The court in the charge directly told the jury to disregard any such contractual duty. The error, if any, was cured by this charge.

■ We also find without merit the assignments directed to the admission of evidence, including a certificate of indemnity insurance furnished by Bridges Paving Company under the terms of its contract, tending to establish agency, and to the charge of the court dealing with that subject of inquiry. The jury by special finding predicated its verdict against Bridges Paving Company upon the specific charge that it negligently failed to provide a flagman for backing trucks. As to that duty, it was found that it failed to act at all and what it may have done thru its servants and agents in some other respect would be wholly immaterial. These errors, if such they were, did not affect the result of the trial.

■ It is strenuously insisted the court erred in not granting the motion for a mistrial based upon a number

of references during the trial to the certificate of indemnity insurance furnished by Bridges Paving Company in compliance with the terms of its contract. It is conceded, under the authority of Grace v. Louisville & N. Railway Co., 19 Tenn. App. 382, 89 S. W. (2d) 354, that where the question of the relationship of master and servant is in issue, documents tending to prove such relationships are admissible; even though it is thereby shown that the defendant was indemnified or protected by insurance coverage. As pointed out in the supporting brief, that case held such documentary evidence admissible where there is other evidence tending to show the existence of the relationship of principal and agent or master and servant. It is said there was no other such evidence in this case. At the time of the introduction of the insurance certificate, plaintiff was endeavoring to establish the relationship of master and servant between Bridges Paving Company and its codefendants engaged in hauling asphalt for it. We are not able to find in the record any indication that the certificate was introduced in bad faith or for any purpose other than as a link in the chain of circumstances which plaintiff was endeavoring to establish as tending to show that relationship. In addition, we have never seen a case where this question arose in which the trial judge seemed more determined to prevent the consideration of liability insurance by the jury for improper purposes. The jury was repeatedly and emphatically admonished not to consider it for any purpose except as bearing upon the question of the relationship of the parties. The court was not requested to require counsel for plaintiff to postpone offering the certificate until the end of plaintiff's proof in chief so that it might be determined whether other connecting and supporting evidence would be introduced to bring it within

the rule of the Grace case. This was a matter addressing itself to the discretion of the trial court and we find no abuse of discretion. Seals v. Sharp, 31 Tenn. App. 75, 82, 212 S. W. (2d) 620.

▮ Under the proof above outlined, we think there was no error in refusing to direct a verdict either upon the ground that there was no evidence of negligence on the part of the defendant Bridges Paving Company or upon the ground of proximate contributory negligence on the part of plaintiff. As to the first proposition, even if it be conceded that plaintiff failed to establish the master and servant relationship between Bridges Paving Company and Sharpe, the driver of the truck, it was for the jury to say whether failure to maintain any safeguards against the obvious dangers attendant upon backing trucks violated a duty owing persons whose duties required their presence in the area. We cannot follow the argument ably and earnestly pressed by counsel for Bridges Paving Company, that there was no such duty owing plaintiff because Bridges Paving Company was not the owner of the property upon which the accident happened. It controlled operations carried on in furtherance of its contract, including the order in which strips of asphalt were laid, which in turn, governed the availability and location of turning space for trucks and where and when asphalt should be dumped at a particular place. We think such control carried with it the obligation to avoid a mode of operations calculated to cause unnecessary danger or injury to anyone of many people who were known to use the area frequently in connection with their various duties. Whether defendant Bridges Paving Company observed this duty and, if not, whether its failure to do so was the proximate cause of plaintiff's injuries were questions for the jury. Likewise, we think

573

reasonable minds could disagree as to whether or not plaintiff was guilty of proximate contributory negligence under all the circumstances and that was, likewise, a question for the jury.

The remaining assignments, other than the 28th directed to the amount of the verdict, relate largely to the admission of evidence and the charge of the court pertaining to the question of the master and servant relation-. ship between Bridges Paving Company and Sharpe, the driver of the truck. To respond to each in this opinion would not be practical. In so far as these alleged errors relate to the question of master and servant they could not have been prejudicial since the jury based its verdict, as shown, entirely upon the omission of Bridges Paving Company to maintain a watchman. Each assignment, however, has been carefully considered and all are found to be without merit. Only the final question of the amount of the verdict remains.

There can be no doubt that plaintiff suffered severe and extremely painful injuries which will be permanent and result in serious physical disability.

When struck by the truck he was knocked to the ground, his feet were caught in the chassis of the truck and his feet and legs were forced up over his body and head, fracturing his right shoulder, the second, third, fourth and eleventh ribs being broken and one or more puncturing his right lung causing gas to gather in the lung cavities and under the skin. A more serious injury, however, was a completely crushed twelfth dorsal vertebra and a resulting serious injury to the spinal cord.

Immediately following his injury he was removed to a hospital in Oak Ridge where he was given a blood transfusion and placed under an oxygen tent to facilitate breathing which had become impaired due to the punc-

turing of his lung followed by a collapse of the lung. To forestall further damage to the spinal cord, it was necessary that he be handled with the most meticulous care and later put in a number of plaster of paris casts so that he could be turned in the bed periodically without danger. When he had recovered from the shock sufficiently, and after about two weeks, he was X-rayed for broken bones and placed again in a cast. During all of this time it was necessary that his bladder be drained by catheter and bowel movements artificially stimulated.

About a month after the accident eight strips of bone eleven to twelve inches in length and about one-eighth of an inch wide were taken from his shins and another piece of bone removed from one hip. These were used to span the broken vertebrae in order to prevent any movement that would further damage his spinal cord and, at the same time, strengthen and support his back.

He remained in the hospital under treatment until December 1, 1949, when he was removed to his wife's home in Milwaukee, Wisconsin, by way of stretcher, ambulance and train. He remained in the hospital until March 1, 1950, when he was fitted with a cast from his hips to his neck which he wore for approximately three months. Later a canvas corset was substituted and he wore the corset until October, 1950. He was entirely confined to his bed until March, 1950, later walked with the aid of two canes, and finally returned to his job the latter part of July, 1950. Hospital and medical bill amount to approximately $3,000. Loss of time amounted to approximately $5,000.

At the time of the trial he was still suffering some pain in his chest, walked with some difficulty, could not raise his body on his toes, tired easily when forced to stand and suffered from a lack of equilibrium especially in the

dark. He testified that it required from 30 minutes to an hour to drain his bladder, this being accomplished by contracting his stomach muscles, and that he had a bowel movement about every five days, occasionally having an involuntary action both of the kidneys and bowels resulting in soiling of his clothing. He has suffered to some extent a loss of sensation in the lower half of his body, is unable to have an erection and is, for that reason, sterile.

The conditions described still persisted at the time of the trial, three years after the injury, and, although he had been reemployed by his former employer at a slight increase in salary, he was forced to take indoor work and there is medical testimony that he has suffered a permanent disability of fifty percent. At the time of his injury he was 29 years of age, married and had a life expectancy of 36.73 years. He was earning a salary of $500 per month. His inability to stand and walk over rough terrain has necessarily to some extent at least impaired his opportunity for advancement as an engineer. There can be no doubt that his injuries and the operations to which he was forced to submit have caused terrific and long continued pain and suffering. The medical testimony indicates that his principal disabilities are due to the injuries to the spinal cord; that the spinal cord has no recuperative powers and that no further improvement may be expected.

Because the amount is so far in excess of any amount previously considered by the Supreme Court or by this Court in personal injury cases, the question of the amount of the verdict and our duty in respect to remittitur has given us much concern. As so often said, the question of the amount of the verdict in personal injury cases is primarily for the jury and trial judge. The function of the appellate court is to suggest a remittitur when,

considering "the nature and extent of the injuries, the suffering, expenses, diminution of earning capacity, inflation and high cost of living, age, expectancy of life and amount awarded in other similar cases", France v. Newman, 35 Tenn. App. 486, 248 S. W. (2d) 392, 396, the verdict appears palpably too large. We are not to substitute our judgment for that of the jury and trial judge and when a remittitur is suggested the amount of the remittitur should be only such amount that, if accepted, the verdict, as reduced, would not be palpably excessive, giving to the jury and trial judge the latitude in fixing the amount to which they are entitled in the free exercise of their discretion.

Any further reference to general principles would be of doubtful value. Likewise, to attempt to assimilate the injuries to plaintiff to injuries sustained in other cases affirmed with or without remittitur would be largely futile. Suffice it to say that probably no reported case in Tennessee in recent years at least has involved injuries so numerous and severe, including the loss of the sexual functions and ability to procreate, as are involved in this case. As to the last mentioned, see, however, cases annotated at 16 A. L. R. (2d) p. 332, 333, including D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897, wherein it was not stated that the loss of sexual power would be permanent, as here. The verdict in that case was for $20,000 and, of course, the only thing decided, as to amount, was that the amount was not excessive. In other cases annotated (from other states) verdicts for loss of sex in a man along with other extensive injuries have ranged from $42,500 to $165,000. In two of these remittiturs were suggested.

We have concluded after the most mature consideration that a remittitur of $20,000 would be proper.

Plaintiff Olson has assigned 21 errors directed to the action of the court in overruling his motion for a new trial filed against Moran Trucking Company, Phillips and Sharpe and 16 assignments of error challenging various actions of the court in his suit against Bridges Paving Company. The latter group of assignments become immaterial in view of the affirmance of his judgment against Bridges Paving Company. References hereinafter to assignments of error will, therefore, be taken to mean assignments of plaintiff in his suit against Moran Trucking Company, Phillips and Sharpe.

The first seven assignments make the insistence that the general verdict of the jury in favor of these defendants and the special findings of the jury are not supported by any material evidence.

In addition to the general verdict in favor of these defendants the jury found (1) that Sharpe was not guilty of negligence in the operation of his truck, (2) that Moran Trucking Company was not guilty of negligence in not having a watchman or flagman to direct the operation of the truck at the time and place of the accident, (3) that Phillips was not guilty of negligence in not having a watchman or flagman to direct the operation of the truck, (4) that the work done or in process of being performed at the time and place of plaintiff's injuries by each of the defendants was not intrinsically dangerous.

While we might be inclined to disagree with some of these findings, especially the finding that Sharpe was guilty of no negligence in backing the truck, the jury found that the proximate cause of the accident was the failure of Bridges Paving Company to provide a flagman or watchman. That finding was well within the province of the jury and was, as we have held, supported by material evidence. The question of Sharpe's negligence, there-

fore, becomes immaterial to the result. A mere finding of negligence will not support a recovery. It must also appear that the negligence relied upon was a proximate cause of the injury and resulting damage.

It is next insisted the court erred in sustaining the motion of the defendants made at the conclusion of plaintiff's testimony for a directed verdict upon the statutory count of the declaration, charging a violation of various statutes regulating the operation of motor vehicles upon public highways. We think the court was correct in the action taken. The road in question had not been opened to traffic at the time in question and was, therefore, not a public highway.

Under the ninth assignment it is insisted the court erred in excluding the testimony of R. E. Robinson with respect to the customary method of operating a paving job under circumstances existing at the time of plaintiff's injury. The verdict of the jury clearly indicates that Bridges Paving Company was found to be in control of the operation of the job and it is difficult to see how the exclusion of this evidence, even if competent, affected the result in so far as the defendants Moran Trucking Company, Phillips and Sharpe were concerned. This assignment is, accordingly, overruled.

For the same reason, among others, we find without merit the assignments directed to the exclusion of various contracts between the Atomic Energy Commission and Merritt-Chapman and Scott Corporation and contracts between subcontractors purporting to make binding on the various parties connected with the work a safety code promulgated by the Atomic Energy Commission. It was shown that the code had been repealed prior to the date of the accident.

The remaining assignments have been considered and found without merit and all are overruled.

Moran Trucking Company filed a conditional motion for a new trial complaining of the court's refusal to direct a verdict in its behalf at the close of all the evidence and its insistence in that respect has been renewed here by filing assignments of error. In view of the action hereinabove taken it is unnecessary to pass on these assignments but, for the record, they are found without merit and are overruled.

It results that the judgment is in all respects affirmed, subject to a remittitur of $20,000. Costs will be adjudged against Bridges Paving Company and surety.

HALE and HOWARD, JJ., concur.