DIXIE FEED & SEED COMPANY, INC., JAMES LEE JOHNSON and DIXIE PORTLAND FLOUR MILLS, INC., Plaintiffs in Error, v. STANIFER G. BYRD, Defendant in Error.—376 S. W. (2d) 745.

Eastern Section. July 20, 1963.

On Rehearing September 26, 1963.

Certiorari Denied by Supreme Court March 5, 1964.

622

Folts, Bishop, Thomas, Leitner & Mann, Chattanooga, for plaintiffs in error Dixie Feed & Seed Co. and James Lee Johnson.

Strang, Fletcher, Carriger & Walker, Chattanooga, for plaintiff in error Dixie Portland Flour Mills, Inc.

H. Keith Harber, Chattanooga, for defendant in error.

McAMIS, P. J. Stanifer G. Byrd sued Dixie Feed & Seed Company, Inc., and James Lee Johnson, driver of its truck, and Dixie Portland Flour Mills, Inc., for personal injuries sustained when the truck backed into a cinder block wall on the premises of the Flour Mills causing it to topple and fall on plaintiff as he walked along an abutting sidewalk in Chattanooga. There was a verdict and judgment against all of the above named defendants for $380,000.00 from which they prosecute the present appeal.

Dixie Feed & Seed Company, Inc., is a nonresident corporation with situs at Comer, Georgia, where its driver, James Lee Johnson, resides. At the time plaintiff was injured, Dixie Portland Flour Mills, Incorporated, occupied, under a lease contract, premises on King Street in Chattanooga where it received, stored and processed grain. A parking area fronting on King Street was enclosed with a cinder block wall approximately 11 feet high. Truck drivers delivering grain were directed to enter this area and park awaiting an opportunity to unload. On one or more previous trips, defendant Johnson had been told by agents of the Flour Mills to park his truck in this area.

On the day of the accident, Johnson drove the truck of the Feed & Seed Company loaded with grain into this parking area to await his turn to unload. He backed the truck within about 1 foot of the wall and cut the switch. Thinking the motor had stopped, he took his foot off the clutch. Thereupon the truck being in reverse gear lurched

backward, struck the wall and toppled it upon plaintiff inflicting grievous injuries, the nature and extent of which will be hereinafter detailed. Johnson was aware that the truck had acted in this way on one previous occasion.

Johnson and the Feed & Seed Company were brought before the court by service of process on the Secretary of State pursuant to the provisions of T. C. A. sec. 20-224 giving the courts of Tennessee jurisdiction over non-resident owners and operators of vehicles registered in a foreign state. Both filed pleas in abatement on the ground, among others, that since the truck was upon private property and was not being operated on a public highway the statute authorizing service of process upon the Secretary of State has no application.

■ We think, under the unique circumstances of this case, the statute applies. The offending vehicle upon coming into the State made use of the public highways of Tennessee for the purpose of delivering grain at the point where the injury occurred in consummation of the owner's contract. Delivery by motor truck at that point could not have been effected without the use of the public highways of Tennessee. And, while there is no proof that the rear of the truck crossed the property line, it was within less than a foot of the street line when it struck the wall and the force of the impact caused the wall to fall on the sidewalk of King Street, a public thoroughfare. Under these circumstances it would be doctrinaire in the extreme to say that a person so injured is to be denied the benefit of the statute solely on the ground that the vehicle was not being operated upon a public thorough-fare.

The question it seems to us was put to rest in Bertrand v. Wilds, 198 Tenn. 543, 281 S. W. (2d) 390. In that case the injury occurred on a road within the grounds of a veterans hospital and, therefore, not upon a public highway or road. The plea in abatement in that case asserted a lack of jurisdiction, to which the author of the opinion, Mr. Chief Justice Neil, after noting that the vehicle had used the public highways to reach the hospital grounds, responded:

"It is our well-considered opinion that the statute applies to the operation of motor vehicles upon public highways by nonresidents and also to the operation of such vehicles on private property, as a necessary incident to public travel upon the streets and highways of this State. Paduchik v. Mikoff, 158 Ohio St. 533, 110 N. E. (2d) 562, construing the statute of Ohio, which is similar to ours, and Sipe v. Moyers, 353 Pa. 75, 44 A. (2d) 263, construing the Pennsylvania statute, which is also similar in all respects to our own statute.

"In Paduchik v. Mikoff, supra, the defendant's contention was identical with the defendant, petitioner in the instant case, that is, that the 'substitution of service statute' was not applicable unless the accident happened on a public highway. The sole issue involved the jurisdiction of the local courts of Ohio over the person of a non-resident who was enjoying the privilege of using the state's highways. In ruling upon this issue, it was held (158 Ohio St. 533, 110 N. E. (2d) 567):

" 'Unquestionably, such jurisdiction extends to the operation of motor vehicles on the public highways of the state and, in the opinion of this court, it also extends to the operation of the motor vehicle operated on private

property in private garages and on private parking lots *as an incident to its operation on such highways.'* (Emphasis supplied.)

"It is true there are cases to the contrary, such as where the accident happened while operating a 'combine harvester' in a wheat field in such a manner as to set fire to and destroy twenty-one (21) acres of wheat. Kelley v. Koetting, 164 Kan. 542, 190 P. (2d) 361, and other cases cited by the Ohio Court.

"The living force of our statute, however, and similar statutes in other states, clearly serves the public interest. These statutes, reasonably adopted to remedy the evil of an ever increasing number of accidents arising from the operation of motor vehicles both on our highways and elsewhere, represent a constitutional exercise of the police power."

In Ellis v. Georgia Marble Co., 191 Tenn. 229, 232 S. W. (2d) 45, the statute was invoked to bring in the non-resident owner of a truck from which the plaintiff when injured was unloading marble. The declaration charged negligent packing of the marble before it left Georgia. In an opinion by Mr. Justice Burnett, the statute was held inapplicable not because the truck was standing on private property but, as we read the opinion, because the vehicle was never "involved" in an accident. That case is not in point under the facts of this case.

The first assignment of the Feed & Seed Company and Johnson complaining of the overruling of their plea in abatement is overruled. It is unnecessary to consider whether the Feed & Seed Company was amenable, as a foreign corporation doing business in Tennessee, to

process on the Secretary of State under T. C. A. sec. 48-923.

■ The Feed & Seed Company insists the Court erred in refusing to charge its special request to the effect that any recovery allowed plaintiff would not be subject to the payment of Federal Income taxes. In the excellent brief of counsel it is very properly conceded that this action of the Court is in accord with the weight of authority. It is said, however, that the minority view is supported by the better reasoned cases and should be followed in this state. We can not agree.

In connection with a comprehensive annotation on this subject it is said editorially at 63 A. L. R. (2d) 1398:

"From the personal injury cases dealing with the present topic, it can be said that the more general view, supported directly and inferentially by the decided majority of the American cases, is that in fixing damages for accrued loss of earnings or for impairment of future earning capacity because of personal injuries, the income tax consequences of the injury and the award should not be taken into consideration; on the contrary, the award of damages should be based upon the plaintiff's gross earnings or earning capacity and should not be reduced because of any income tax saving which may result to the plaintiff from the fact that the damages will be exempt from income tax."

As appears from an analysis of the cases appearing in the above annotation, the reasons advanced in support of the majority view are that to deduct the anticipated tax saving from the recovery would nullify the tax benefit conferred by Congress in expressly exempting damages for personal injuries and would unduly complicate the

trial of personal injury cases. In addition, we think, to attempt to do so would inject into the already difficult and complicated computation of such damages factors which change from time to time, such as the rate of taxation and the number of plaintiff's exemptions, and allow juries to indulge in speculation and conjecture in arriving at the amount to be deducted.

It is next insisted the Court erred in excluding evidence offered to show plaintiff's optional and compulsory retirement ages as a postal employee, his retirement benefits and the payment to him after he was injured of accumulated sick leave benefits.

■ In resolving this question it is important to keep in mind that in an action to recover for personal injuries it is not the loss of time or earnings that the wrongdoer must pay for but loss of the ability to earn that constitutes an element of damages. This was made clear by Judge Felts, now Mr. Justice Felts, in Southern Coach Lines, Inc. v. Wilson, 31 Tenn. App. 240, 214 S. W. (2d) 55, where it was said:

"It is true this distinction is often not observed. Indeed, it is of no practical importance in some cases. For instance, in a case where the plaintiff was earning and, if he had not been injured, would have continued to earn at the same rate during the period of his incapacity, his loss in earnings furnishes practically an accurate measure of his loss in earning capacity. But in other cases the distinction is vital and failure to observe it would lead to an unjust result.

"This is true in a number of cases where recovery is allowed for loss of earning capacity though there has been no loss of earnings; as where plaintiff's employer

gratuitously paid his wages during his incapacity (Railroad Co. v. Porter, 117 Tenn. 13, 94 S. W. 666); where he is receiving greater wages than before his injury (Central Mfg. Co. v. Cotton, 108 Tenn. 63, 66, 65 S. W. 403; Adamant Stone & Roofing Co. v. Vaughn, 7 Tenn. App. 170, 181; Ostertag v. Bethlehem Shipbuilding Corp., 65 Cal. App. (2d) 795, 151 P. (2d) 647); or where he was not working and would not have worked during the period of his incapacity. Doherty v. Ruiz, supra [302 Mass. 145, 18 N. E. (2d) 542]; McIver v. Gloria, 140 Tex. 566, 169 S. W. (2d) 710; Mississippi Cent. R. Co. v. Smith, 176 Miss. 306, 168 So. 604; Restatement, Torts, secs. 906 (Comment c) and 924 (Comment c)."

In Railroad Co. v. Porter, 117 Tenn. 13, 94 S. W. 666, cited by Judge Felts, the Court dealt at some length with the propriety of considering in diminution of damages compensation gratuitously paid by the plaintiff's employer after he was injured and cited a number of cases from other jurisdictions dealing with this question, as well as the question of benefits accruing under insurance contracts. As we read the opinion it holds unequivocally that these are extraneous matters and are not to be considered.

■ The modern tendency is to regard pension benefits as deferred compensation for services rendered. So considered, they represent accumulated savings as much as money in the bank or investments in income producing property. With the exception of cases arising under the Federal Tort Claims Act the courts unanimously hold that damages in personal injury cases are not subject to mitigation because the plaintiff is receiving or will receive a pension. Anno. 75 A. L. R. (2d) 886.

The assignment of the Feed & Seed Company and Johnson as well as that of the Flour Mills complaining of the exclusion of this evidence are overruled. Discussion of the assignments of all defendants complaining of the amount of the verdict will be jointly considered after disposing of the other assignments of the Flour Mills.

Its first assignment is that the Court erred in not sustaining its motion for a directed verdict at the close of plaintiff's proof in chief. Interwoven with this insistence is the question of the effect of this defendant standing on its motion and announcing that it had rested, would disclaim the benefit of any evidence thereafter introduced by its co-defendants and would not be bound by any further evidence introduced in the case.

In disposing of this assignment we need not consider the effect of this announcement, for we have concluded that plaintiff's evidence in chief was sufficient to take the case to the jury and constitutes material evidence sustaining the verdict. On that question, a statement of the averments of the common law count of the declaration and a brief summary of plaintiff's proof in chief will suffice.

The common law count charges that after defendant Flour Mills entered into possession of the premises under lease contract it removed an existing roof over the parking area in question, which had theretofore served to brace and strengthen the wall, without providing other braking action in lieu thereof, failed to warn drivers of incoming truck loads of grain that the cinderblock wall was unsupported and unprotected by wheel guards adjacent to the wall to check any trucks in the area and prevent them from coming in contact with the wall with resulting danger to pedestrians on the sidewalk and that

no warning was given pedestrians of the danger of trucks being parked within the parking area next to the wall.

Clifford A. Betts, Jr., a structural engineer, testified that he had examined the wall; that it was too high for its width, was unstable and insufficient to withstand wind pressures. As to its adequacy as an enclosure for a parking lot and what would have been necessary to make it suitable for that purpose he testified:

"Number one, it would be absolutely necessary to put in some sort of wheel barrier a distance of * * * in the neighborhood or five or six feet, say, and high enough to prevent a vehicle from coming in contact with the structure. Number two, the wall would have to be braced up with either buttresses or piers, as I mentioned before, no less than two, in my opinion, would be necessary, centered or spaced out evenly along the wall's length."

Mr. Betts further testified that the roof previously supported by the wall served to stabilize it by preventing it from moving sideways as the result of pressure from the side.

Other proof for plaintiff established that the truck, operated by defendant Johnson in the area where he had previously been directed to park by agents of the Flour Mills, while so parking struck the wall and caused it to fall upon the sidewalk where it struck and injured plaintiff.

 It is clear that, under the proof, the questions of common law negligence and proximate cause were for the jury. The Court was not asked to rule separately on each count of the declaration. The motion was general and in the absence of such request there was no error in failing

to direct a verdict on those counts of the declaration charging a violation of the municipal building code. As said in Taylor et al. v. Cobble et al., 28 Tenn. App. 167, 177, 187 S. W. (2d) 648, it is impractical to expect the trial judge on general motion for a directed verdict to apply the proof to the several counts of the declaration without any expression or assistance from counsel for the moving party.

Under assignment Three it is insisted the court erred in refusing to charge as requested that, the Flour Mills having rested its case and made the announcement above mentioned, the jury should not consider as against it evidence introduced by its co-defendants.

██ The granting of the motion for a directed verdict at the close of plaintiff's proof in chief was a matter within the discretion of the trial judge. Since he exercised that discretion by overruling the motion, evidence could thereafter be introduced touching the liability of the Flour Mills. It follows that there was no error in declining to charge the special request. Sadler v. Draper, 46 Tenn. App. 1, 326 S. W. (2d) 148.

If we are mistaken in this holding, however, we do not think the Flour Mills was prejudiced in view of the undisputed evidence of the condition of the wall above detailed.

██ The second half of this assignment complains of the refusal of the Court to charge as requested:

"Gentlemen of the Jury, I further charge you that where two distinct causes, unrelated in operation, contribute to an injury and one of them is the direct proximate cause and the other merely furnished the condition

or gave rise to the occasion by which the injury was made possible the former will alone be regarded as responsible for the result.''

The refusal to so charge was not error. The Flour Mills did more than merely create the condition by which the injury was made possible. Knowing the unstable condition of the wall it invited truck drivers to park their trucks in such close proximity thereto that any slight miscalculation of drivers could cause an injury to persons on the sidewalk.

The fourth assignment is that the Court erred in charging:

''Now, if you find that the defendant, James Lee Johnson, has been guilty of negligence, and if you further find that if the co-defendant, Dixie Portland Flour Mills, Incorporated, was his principal at the time, that is, that he was acting under their instructions in any manner, then that would create an agency, and in that event you could predicate the liability of Dixie Portland Flour Mills, Incorporated, upon the negligence of James Lee Johnson, provided you find that Johnson was, at the time of this accident, the agent of Dixie Portland Flour Mills, Incorporated.''

While the Court did not in terms relate this charge to the act of the Flour Mills in directing drivers where to park, the jury may have so assumed.

At first blush, it seems erroneous to consider Johnson the agent of the Flour Mills. However, the record shows that one reason for lining up the trucks near the wall as they entered the premises was to prevent congestion which might interfere with the movement of trucks out of

the plant carrying the finished product of the Flour Mills. To that extent it had an interest in the parking of trucks near the wall and to that limited extent we think if Johnson acted under the instructions of the Flour Mills he might be considered its agent. There is no suggestion that Johnson ever acted in any other way as the agent of the Flour Mills and, unless the charge complained of is to be taken as relating to the parking of the truck at the particular place in question, it is a mere abstraction in the charge.

The appellate court will not reverse on the ground the court charged the jury on an abstract proposition not raised or having no application to the proven facts unless it affirmatively appears that the charge affected the result of the trial. Hughes v. Taylor, 29 Tenn. App. 548, 198 S. W. (2d) 337, and cases cited.

While we think it would have been better either to have omitted this charge altogether or related it directly to the purpose of the Feed & Seed Company to keep the parking area clear for its outgoing trucks, it does not affirmatively appear that this portion of the charge affected the result of the trial. On the contrary, in view of the undisputed evidence that due to the removal of the roof and the absence of a guard curb the wall was a hazard to pedestrians on the sidewalk, we think it most unlikely that the jury gave any consideration to whether Johnson acted as agent of the Flour Mills in parking the truck and cutting the switch in such close proximity to the wall as charged. The charge is not necessarily to be taken as leaving that question to the jury and, therefore, is to be considered ambiguous rather than affirmatively erroneous.

Other assignments relating to the charge have been considered and found without merit because not shown to be prejudicial in view of the undisputed evidence of common law negligence or because not included in the motion for a new trial. To discuss each at length would extend this opinion beyond reasonable limits.

Remaining to be considered is the question of the excessiveness of the verdict.

The injuries sustained by plaintiff were unusual and devastating. Although his mind was not affected, that he is totally and permanently disabled appears without serious question. At the time of the accident he was regularly employed as the operator of a mail delivery truck earning, with overtime pay, approximately $6,000.00 per year. At the time of the accident he was 59 years of age and had a life expectancy of 16.4 years. At the time of the trial he had suffered a loss of earnings amounting to $10,848.06. If he had worked on until compelled to retire at age 70 his earnings subsequent to the date of trial would amount to approximately $51,000.00 His total medical expenses to the date of the trial amounted to $35,343.14. His physician, Dr. Arnold, estimated that his future bills for drugs, dressings and disposal bags will amount to $50.00 per month or, for the period of expectancy following the trial, a total of $8,760.00 and that his doctor should check him about once each week. The cost of such future calls at $5.00 would amount to approximately $3500.00.

Computed up to the date of compulsory retirement his loss of income, past and future, totals $61,848.00; medical expenses already incurred $35,343.14; future medical supplies $8,760.00, making a total of $105,951.14, exclusive of

future doctor's bills, hospital bills and nursing. These prospective expenses require some further development of the extent and nature of plaintiff's injuries.

The medical proof shows that, due to a spinal injury, plaintiff is permanently paralyzed from the navel down. Due to this injury and complications arising therefrom he had had, including plastic operations resulting from a severe and deep seated bed sore, eleven major surgical operations. To prevent infection due to a complete inability to control kidney and bowels action, drainage outside the body had to be provided, necessitating disposal bags outside the body for urine and the opening of the abdomen to bring the large bowel outside where it was stitched to the outer wall and where it will have to remain. This, however, does not solve the lack of bowel control. He has suffered a complete loss of sexual powers.

The medical proof is that with proper medical and nursing care plaintiff should live out his normal expectancy. He will have to remain in bed for the greater part of each day but will be able to sit in a wheel chair an hour or more during the day. He will be able to propel and guide the chair within his home. With adequate assistance he can get in and out of an automobile and possibly operate a specially constructed car himself.

There is little or no dispute that he will need throughout the remainder of his life someone subject to call 24 hours a day. This must be a person strong enough to lift him in and out of bed and into the wheel chair. While the person in attendance need not be a registered nurse or even a licensed practical nurse, such person must have sufficient experience in handling such cases to recognize and meet problems as they arise and willing and capable

of attending to his disposal facilities. To prevent bed sores common to persons paralyzed below the waist it will be necessary that he be turned every two hours. Except when hospitalization may occasionally be necessary he will be able to live at home.

There is no proof as to the probable cost of hiring persons capable of performing the necessary nursing duties and strong enough to do the required lifting. The nearest approach is proof that licensed practical nurses charge $12.00 for an eight hour day. On that basis and assuming the need for three shifts during each 24 hours plaintiff's counsel arrives at the figure $191,736.00 by multiplying $36.00 by 127,824 hours life expectancy.

Our difficulty lies in the fact that according to plaintiff's physician a licensed practical nurse will not necessarily be required and that constant attendance and care will not be necessary but only that someone be subject to call. Another deficiency in the record is the lack of proof that persons possessing the inclination and training to do this work can be obtained and the probable cost of obtaining such services.

If we accept counsel's figure of $191,736.00 and add to that the above figure of $105,951.14 we arrive at a total of $297,687.14 without considering possible future doctor's bills, pain and suffering, inconvenience and the deprivation of the enjoyment of the normal activities of life. We can not know how much value the jury may have placed upon such intangible elements of damage.

If, as seems probable, the jury accepted plaintiff's figure of $36.00 per day for three shifts of licensed practical nurses and multiplied that figure by plaintiff's life expectancy, they found that the total future nursing

cost would amount to $191,736.00. This figure added to our figure of $105,951.14 actual expenses and loss of earnings, past and prospective, would amount to $297,687.14. From this it may be inferred that the jury allowed the difference between that figure and the $380,000.00 verdict, or approximately $80,000.00 for pain and suffering, etc.

While we have no disposition to minimize the great tragedy that has befallen plaintiff, the proof shows that due to paralysis the pain has not been commensurate with the other elements of damage.

It is obvious from the foregoing statement of plaintiff's injuries and resulting loss of income and expenses for medical and nursing care, both past and prospective, that a verdict and judgment in excess of any heretofore considered by the appellate courts of Tennessee is warranted. We are, therefore, not justified in suggesting a remittitur because the amount is in excess of any verdict heretofore approved. The rule guiding our deliberation remains the same, i. e., we are to remember that the amount to be awarded in personal injury cases is primarily within the discretion of the jury and trial judge and we are not to substitute our judgment for theirs or interfere unless there has been an abuse of discretion and the amount of the verdict is so large as to strike the average mind as palpably excessive and unjust. And if a remittitur is suggested the amount suggested should be only ''such amount that, if accepted, the verdict, as reduced, would not be palpably excessive, giving to the jury and trial judge the lattitude in fixing the amount to which they are entitled in the free exercise of their discretion.'' Olson v. Sharpe, 36 Tenn. App. 557, 259 S. W. (2d) 867.

■ To apply these guiding principles to the case at bar, we feel that a remittitur in some amount is indicated since the proof failed to establish the need for licensed practical nurses 24 hours of each day. The plaintiff's own proof disproves this hypothesis as above noted; and the record fails to show what it would cost to have a person with the required qualification, perhaps living in the home, on call for 24 hours each day. If such a person should be used the value of board and lodging should be added. In the present state of the record we could, at best, only guess at a proper allowance for future nursing expense, as the jury must also have been forced to do under the undisputed evidence above discussed.

Reluctant as we are under the circumstances to attempt to suggest an amount, remembering that plaintiff does not have to accept it, we suggest a remittitur of $90,000.00. If accepted, judgment will be entered here for $290,000.00. Costs are adjudged against defendants and sureties on their appeal bonds.

Cooper, J., and Taylor, Special Judge, concur.

## On Petition To Rehear

Petitions to rehear have been filed by Dixie Feed & Seed Company and its driver Johnson and by Dixie Portland Flour Mills, Inc.

■ In their petition to rehear Dixie Feed & Seed Company and Johnson first complain because we failed to pass on whether the Feed & Seed Company was subject to process under T. C. A. sec. 48-923. Having held the Feed & Seed Company and Johnson subject to process under T. C. A. sec. 20-224, it was not necessary to hold whether the Feed & Seed Company was also amenable to

service as a non resident corporation doing business in Tennessee. This Court is not required or expected to rule upon questions of law deemed to be immaterial or non-determinative of the result. To do so would invite confusion and uncertainty as to whether the holding should be regarded as authoritative or mere dictum.

These petitioners further complain because we failed to pass upon the constitutionality of T. C. A. sec. 48-923 and T. C. A. sec. 20-224. As pointed out it was unnecessary to pass upon the applicability of T. C. A. sec. 48-923. This holding eliminated the necessity of passing upon its constitutionality. As to the constitutionality of T. C. A. sec. 20-224, we cited and quoted at some length from Bertrand v. Wilds, 198 Tenn. 543, 281 S. W. (2d) 390, where the question of the constitutionality of the statute is discussed and the statute sustained as a proper exercise of the police power. It was our intention to hold it constitutional. It is so held.

The petition to rehear of the Feed & Seed Company and Johnson are overruled.

The first ground of the petition filed in behalf of Dixie Portland Flour Mills is that we erroneously treated its motion as a general motion for a directed verdict when, in fact, the following was added at the end of the motion: "and a special motion on each count of the declaration".

We need not decide whether this language had the effect of making the motion something more than a general motion for a directed verdict. Even if it did have that effect, failure of the Court to sustain the motion as to the second count of the declaration charging a violation of the ordinances of the City of Chattanooga adopting a building code did not constitute reversible error in view

of the evidence of common law negligence tending to sustain the first count of the declaration.

In City Transportation Corp. v. Seckler, 32 Tenn. App. 661, p. 667, 225 S. W. (2d) 288, p. 291, it was said:

"If we are mistaken, however, in holding that the court was not in error in overruling the motion for directed verdict as to the charge of the declaration respecting the school zone speed limit, we are clearly of opinion it is the duty of this court to treat any error in respect to that charge as harmless and apply to the judgment the findings of the jury on the common law counts and the charges of violating the 30 mile speed limit in business and residential areas contained in the statutory count."

The opinion cites in support of the holding the opinion of Mr. Chief Justice Green in Tennessee Central Railway Co. v. Umenstetter, 155 Tenn. 235, 291 S. W. 452, 453, and see Taylor et al. v. Cobble et al. cited in our original opinion.

Under the second ground of the petition to rehear it is insisted we failed to respond to petitioner's assignment of error complaining that the trial court erred in admitting into evidence a building code "in no way relevant to the issues before the court."

As noted in our original opinion the witness Betts, a structural engineer, testified as to the instability of the wall. The Flour Mills offered no evidence to the contrary. Thus there was undisputed evidence from which the jury could find common law negligence. It is immaterial whether, as charged in the declaration, the wall as so constructed was also in violation of the building code which the Flour Mills insists does not apply. It,

therefore, does not affirmatively appear that, even if erroneous, the admission of this evidence affected the result of the trial.

Under T. C. A. sec. 27-117, we are forbidden to reverse where there is sufficient competent evidence to sustain the verdict and it does not affirmatively appear that the erroneous admission of evidence affected the result. Louvier v. Nashville, 1 Tenn. App. 401; Butler v. State, 185 Tenn. 686, 207 S. W. (2d) 584; Management Services, Inc. v. Hellman, 40 Tenn. App. 127, 289 S. W. (2d) 711.

 It is next insisted we erred in not reversing because of certain remarks made by the trial judge in the presence of the jury. The assignment predicated upon these remarks was overruled because not embraced within the motion for a new trial.

 We are also asked to limit the time within which the remittitur may be accepted. The time will be limited to the period of 10 days after the filing of this opinion.

For reasons indicated we adhere to our original conclusion that the judgment should be affirmed, subject to the suggested remittitur.

Cooper, J., and Taylor, Special Judge, concur.