HATCH *et al. v.* BRINKLEY.

(*Jackson,* April Term, 1935.)

Opinion filed April 6, 1935.

SAM P. WALKER, of Memphis, for plaintiffs in error.

W. P. ARMSTRONG, C. C. GILLESPIE, and SENECA B. ANDERSON, all of Memphis, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

Mrs. Brinkley sued Hatch to recover damages for injuries received when his automobile, in which she was a guest, turned over. Before the case was tried Hatch was adjudged insane and committed to the hospital at Bolivar. Mrs. Barner, daughter of Hatch, qualified as his guardian, and was made a party defendant to the suit. Mrs. Brinkley will be referred to herein as plaintiff. The jury rendered a verdict in favor of plaintiff for $5,000, which was approved by the trial court, and his judgment affirmed by the Court of Appeals. The amount of the verdict is not questioned, so that it will be unnecessary to refer to the nature of plaintiff's injuries.

Plaintiff is a widow and has two grown daughters. Hatch was sixty-two years of age at the time of the accident on April 24, 1934, and was an engineer on the Illinois Central Railroad. These parties had been acquainted for several years and were accustomed to riding around together. Hatch owned and drove a five-passenger Hupmobile sedan. With respect to plaintiff's

knowledge of his skill and ability to drive an automobile, we quote from her testimony as follows:

"Q. He was a good driver?

"A. No, I would not say he was a good driver.

"Q. Would you say he was a poor one?

"A. I would say he is careless.

"Q. You would say he is careless?

"A. I would say he is.

"Q. You would say so?

"A. I would say so.

"Q. You judge that from the fact that you had driven with him many times; is that true?

"A. Yes; and I cautioned him all the time though about the way he was driving. . . .

"Q. You say he was a careless driver. By that you mean that he did not pay attention to where he was going?

"A. I just mean that he looked away when he would be driving along.

"Q. He did not watch the road, in other words; is that it?

"A. He was not watching the road or he would not have gone off the road.

"Q. I am talking about habitually now, his general way of driving. His general way of driving was not to watch the road; is that right; is that correct? You have to answer, Mrs. Brinkley, so the stenographer can get it.

"A. Yes.

"Q. And that had been the condition for some four or five years?

"A. No.

"Q. How long? Since he was sick was that the condition?

"A.  No.

"Q.  Before that or afterwards? Starting at the point when he was in the hospital, in St. Joseph's, did his carelessness become evident before or after that?

"A.  Well, I don't know.

"Q.  It was very plain to your mind though that he was not what you would call a good driver?

"A.  No, I would not say he was a good driver.

"Q.  And how long had you had that idea?

"A.  I would not say, for I don't know.

"Q.  You continued to ride with him nevertheless, didn't you, by yourself? I guess that is correct, isn't it? Is that correct?

"A.  (No answer)

"Q.  I will ask you another question then. How long had you had knowledge of the fact that Mr. Hatch was a poor driver and continued to ride with him?

"A.  Well, I don't know how long.

"Q.  As much as six months?

"A.  No.

"Q.  You knew he fainted when he was driving his automobile down here on Second Street, didn't you?

"A.  Yes, I knew that.

"Q.  And you continued to ride with him frequently after that too, didn't you?

"A.  Yes.

"Q.  Is that correct?

"A.  Yes."

The accident occurred about 8 o'clock on a dark, rainy night on highway No. 15, between Somerville and Memphis.  That afternoon Hatch had invited plaintiff to ride with him to Whiteville, where her sister resided,

and the accident happened as they were returning. The road is concrete with dirt shoulders on both sides three or four feet in width. The lights on the car were burning brightly, and Hatch was driving twenty-five or thirty miles an hour.

Mrs. Brinkley, on cross-examination, testified that after rounding a little curve the automobile straightened out and had traveled the width of the courtroom when the right rear wheel went off the pavement, and that when Hatch tried to get it back the car skidded across the road into a ditch on the south side. She also testified that she did not know whether Hatch was looking away from the road when the wheel left the concrete, and that she did not see Hatch apply the brakes and did not hear them applied. She further testified that she was seated beside Hatch, on the right-hand side of the car; that the shoulder of the road was soft and slick; and that she did not know what caused the wheel to leave the highway. She admitted that Hatch paid her hospital bills.

Gordon Spain was traveling east in his Ford car and was about 300 yards west of the Hatch car when he saw it turn over in the ditch. He drove up to the place, helped the parties out of the car, and drove them to Somerville in his automobile. He lived in the vicinity of the accident, and testified that these shoulders were hard that night. With respect to the scene of the accident, he testified, on cross-examination, as follows:

"Q. Now, there is a curve before you get to this place, you say. Is it a right-hand curve or left-hand curve?

"A. Right-hand curve, coming toward town.

"Q. And this was a straightaway strip, and they had gotten out of the curve about 100 yards, if I understood you correctly?

"A. Yes.

"Q. Plain, straight, open highway where this car went off the road?

"A. Yes sir."

The facts are uncontroverted as to how the accident occurred. The parties were driving along this highway at a point where it was perfectly straight at a speed of twenty-five miles per hour. Mrs. Brinkley was seated on the right-hand side of the car, and was in a much better position than Hatch to observe whether the car was too near the edge. She did not testify that she so considered it, nor that she cautioned or warned Hatch of that fact. No explanation is offered as to how, in these circumstances, the front wheel remained on the pavement and the rear wheel rolled off. That is purely conjectural, and we can only account therefor upon the theory that the rear wheel struck some small object that caused it to deflect, or that the road was so slick at this particular place that the wheel slipped off. It may have struck some wet mud that caused it to slide off.

Upon this theory of the case the only basis for charging Hatch with negligence is that he drove too close to the edge of the pavement. Without deciding that this constituted actionable negligence, if we assume that it did, the negligence of Mrs. Brinkley was just as great. Upon this aspect of the case the court instructed the jury as follows:

"Now, gentlemen of the jury, the law is that the guest is chargeable in law with contributory negligence, if the

accident or injury was caused by certain inattention or carelessness of the driver, of which the guest was familiar and knew.''

Since Mrs. Brinkley admitted that she knew that Hatch was careless and inattentive when driving, based upon her experience in riding with him, there can be no recovery upon this phase of the case. In *Dedman* v. *Dedman*, 155 Tenn., 241, 246, 291 S. W., 449, 451, it is said: ''One riding in an automobile as a guest cannot rely upon the care and vigilance of the driver to the extent of relieving himself from the exercise of reasonable precautions for his own safety. This obligation is personal and continuing.'' This rule was approved and emphasized in *L. & N. R. R. Co.* v. *Anderson*, 159 Tenn., 55, 15 S. W. (2d), 753.

The question of incurred risk was discussed at some length in a written opinion in the case of *James L. Talbot, Jr.,* v. *Andrew Taylor, Sr., et al.* (Tenn. Sup.), Madison Law, filed at Nashville on March 19, 1935.

The plaintiff insists, however, that the proximate cause of the injury was the negligence of Hatch in suddenly applying his brakes after the car was back on the pavement so as to cause it to skid. That seems to have been the theory upon which the trial court and the Court of Appeals approved the verdict.

We quote from the charge as follows: ''Now, the plaintiff, on the other hand, says that this was not caused by the thing that the plaintiff knew, if she knew anything about the driving of the defendant; that it was not due to his inattention or carelessness in the sense that she had observed any inattention or carelessness on his part; that it was due to an act of negligence on the

defendant's part, in that he got his car off the right-hand side of the road, got it back on, and slapped the brakes on when he knew that that would cause the car to skid, or in the exercise of reasonable and ordinary care should have known that it would skid, and that carried it off the left-hand side of the road. So that the plaintiff says that the proximate cause of the car going off on the left-hand side of the road was the act of the defendant independent of any inattention or carelessness that the plaintiff knew about prior to that time.''

In the opinion of the Court of Appeals it is said:

''As we have already observed, it may be conceded that Mrs. Brinkley did not consider Hatch a careful driver of an automobile. She testified that his lack of care consisted in his failure to carefully watch the road while driving, and that he was given to looking around. This may have been the cause of the right hind wheel getting off the concrete and on the dirt shoulder, and if it should be held that she assumed the risk of riding in the automobile with Hatch and the risk of his getting the car off the road because of inattention, the fact remains that this accident resulted because in attempting to get the car back on the concrete surface the car skidded on the muddy and slick shoulder, and in this situation Hatch suddenly applied the brakes, causing the car to further skid and to run across the road and turn over in the ditch. There is no evidence in the record that Mrs. Brinkley had any reason to believe that Hatch did not know that it was a dangerous thing to do when an automobile is skidding to suddenly apply the brakes. There is no evidence that Mrs. Brinkley had any reason to believe that Hatch did not know and understand the

usual mechanics of the proper operation of an automobile.''

As previously stated, Mrs. Brinkley, who was seated beside Hatch, did not see him apply the brakes and did not hear them applied. This theory of the case is predicated upon the testimony of Lawrence Mason and the two daughters of Mrs. Brinkley, who undertook to relate statements made to them by Hatch as to how the accident occurred. Mason, on direct examination, testified as follows:

"Q. What did he tell you?

"A. He was driving into Memphis in the rain, trying to get home, and that the car went off the road, which he felt might have been some of his—some fault of his, through carelessness in driving, possibly, if he had been more cautious in his driving he may not have had the accident.

"Q. Did he tell you what happened to the car after it went off the road?

"A. It turned over on its side.

"Q. Did he or not tell you what he did after the car went off the road, what he did about checking the car?

"A. He said he tried to get it back. He said one of the wheels, I think, went off the road, and he pulled the car back on the highway, and then put on his brakes and it started to skid.''

On cross-examination Mason testified:

"Q. Repeat what he said about how it happened?

"A. He said that he was driving into Memphis on the concrete road, in the rain, and after he had passed this little curve in the road he went off the road, one of the wheels of his car, I don't know which, I don't re-

member, went off the road in the soft dirt, and he yanked the wheel back into the road and as he did so the car started to skid, he put his brakes on, and the car went on the other side of the road and turned over.''

It will be observed that this witness on direct examination says that Hatch stated that in trying to get the car back ''he put on his brakes and it started to skid.'' On cross-examination he says: ''He yanked the wheel back into the road and as he did so the car started to skid, he put his brakes on, and the car went on the other side of the road and turned over.'' These statements are contradictory and neutralize each other, thereby destroying his testimony. If the car started to skid across the road, it would be quite natural in the emergency to apply the brakes in an effort to keep it from going into the ditch.

Mabel Brinkley did not detail her conversation with Hatch on direct examination, but on cross-examination she testified as follows: ''He said after the car skidded—I understood after he had straightened it on the road it skidded and he stepped on the brakes, and he lost control of it that way.''

Lucile Brinkley, as to Hatch's statement, testified as follows: ''He told me they were driving home from Somerville late Sunday afternoon; it was raining, and that his rear right wheel left the pavement and went onto the shoulder of the road, which was dirt, and that the car in righting it swerved, and that he put on his brakes, and the car skidded and he lost complete control of the car, and then they went over the embankment.''

The witness does not undertake to explain what she understood by ''it swerved,'' but it must have meant

"skidded." The car was not going where Hatch wished it to go, and in his effort to check it he applied the brakes, but it skidded on into the ditch.

From the foregoing it will be observed that the evidence does not support the finding of the Court of Appeals. that Hatch applied the brakes suddenly, causing the car to skid. Neither of the witnesses stated that the brakes were applied suddenly. Neither is there any evidence that the application of the brakes caused the car to skid. As we interpret the testimony, it was when the car began to skid that the brakes were applied. Any reasonably-minded person seeing his car headed for a ditch would try to stop it by applying the brakes.

Two expert witnesses were introduced who testified that when a car is traveling fast on a wet road, if the brakes are applied suddenly, it will likely cause the car to skid. They further testified that if the brakes are applied gradually the car is not apt to skid. This testimony has no application to the facts of this case, first, because there is no evidence that Hatch was driving fast when he applied his brakes; second, for the reason that there is no testimony that they were applied suddenly; and, third, because it appears that the car was skidding when the brakes were applied.

With respect to the liability of a host to a guest when in an emergency he uses bad judgment, there are few authorities. The Supreme Court of Wisconsin, which has probably gone further than any other court in absolving a host from liability to his guest, in *Eisenhut* v. *Eisenhut*, 212 Wis., 467, 248 N. W., 440, 250 N. W., 441, 91 A. L. R., 549, held that where a driver of an automobile was exercising such skill as he possessed in try-

ing to get back on a concrete highway where the right wheels of the car had gone off on the shoulder he was guilty of no such breach of duty to a guest as renders him liable for injuries when the car upsets. In the annotation to that case in A. L. R., the editor says:

"While, aside from the Wisconsin cases, there is little authority on the question under annotation, it seems clear, especially in view of statutory provisions which are in force in many jurisdictions, relieving a host from liability for injury to a guest in his automobile in the absence of gross negligence, that a host cannot be held liable for an injury to a guest resulting from the host's inexperience or lack of skill as a driver. In some of the cases reaching this conclusion the decision has been based on the ground that there was no breach of duty by the host, or that the guest accepted or assumed the risk; in others, recovery was denied on the ground of contributory negligence."

In 45 Corpus Juris, 710, 711, it is said:

"Where one is confronted with a sudden emergency, without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly, if he exercises such care as an ordinarily prudent man would exercise when confronted by a like emergency, he is not liable for an injury which has resulted from his conduct, even though another course of conduct would have been more judicious or safer or might even have avoided the injury, as under such circumstances the injury is regarded as an inevitable accident."

The annotator in 93 A. L. R., 1117, 1118, says:

"It has been generally held that the mere fact that an automobile skids on a slippery pavement does not of itself constitute evidence of negligence upon the driver's part, so as to render the *res ipsa loquitur* doctrine applicable."

Numerous cases are cited that support this statement.

Even should it appear that in an emergency a driver applies his brakes too suddenly, we would be very reluctant to hold that he was guilty of actionable negligence because he used bad judgment. Negligence implies carelessness or indifference to consequences. In the instant case we are satisfied that Hatch was using his best judgment and was doing what he considered proper in his attempt to get his car under control.

In these guest cases there has been so much abuse of hospitality that the tendency has been to restrict rather than to extend the rule as to the liability of a host to his guest. The Massachusetts, Georgia, Washington, and Wisconsin courts limit recovery to cases of gross negligence, and statutes adopting that rule have been passed in a number of states.

This was an unfortunate accident, but so far as appears from the record Hatch, with his lack of skill, which was known to plaintiff, was driving as carefully as was his custom, and when his right rear wheel, for some unknown reason, slipped off the pavement he exercised his best skill and judgment in his attempt to get it back on, and should not have to account to his guest for the resultant injury which she received.

The judgment of the Court of Appeals and that of the trial court will be reversed, the motion for a directed verdict sustained, and the suit dismissed.