PETERS *v.* TENNESSEE CENT. RY., INC.

(*Nashville*, December Term, 1942.)

Opinion filed January 30, 1943.

510

J. E. Travis, of Nashville, for plaintiff in error.

Roberts & Roberts, of Nashville, for defendant in error.

MR. JUSTICE NEIL delivered the opinion of the court.

The plaintiff instituted suit in the Circuit Court of Davidson County for damages for personal injuries sustained about March 31, 1939, against the defendant, and his right of action is based upon the Federal Employers' Liability Act, 45 U. S. C. A., section 51 et seq.

The case has been tried twice, the first resulting in a verdict for the plaintiff in the sum of $10,000, which was set aside upon motion of the defendant. Upon a retrial of the case (second trial) the jury returned a verdict for plaintiff for $4,000. The defendant made a motion for new trial, which was sustained, and the plaintiff's suit dismissed. The plaintiff thereupon made a motion for a new trial, which motion was overruled, and he appealed to the Court of Appeals. The Court of Appeals having decided the case adversely to plaintiff, he petitioned this Court for *certiorari*, which was granted and oral argument heard at a former day of the present term of court.

We have before us the record of the first trial, the plaintiff taking a wayside bill of exceptions, which was duly signed by the trial judge, and the record of the second or last trial. Before setting out in chronological order and discussing the several assignments of error, we think it would be in order to first recite the substance of the plaintiff's contention, upon which he seeks a recovery:

The Tennessee Central Railway is engaged generally in the transportation of freight in interstate commerce, its main line running from Harriman, Tennessee, to Hopkinsville, Kentucky. It operates a branch line from Nashville to Old Hickory in Davidson County, which line leaves the main line at a point near Hermitage, Ten-

nessee, and runs to the DuPont Rayon Plant, a few miles away. It appears that much freight, intra- and interstate, is taken to and from said station to the DuPont Rayon Plant.

At Hermitage, or near that point, the railroad has a water tank to supply its engines with water. Also at this point a train crew was engaged in switching operations. There is always an overflow of water from the water tank, the surplus water running down the side of and underneath the rails of the track and between the crossties. At the time of plaintiff's injury, he had been employed as a conductor on the Tennessee Central for almost thirty years, and on March 31, 1939, was a conductor on a run between Nashville and Old Hickory. On said date he was engaged in the process of switching cars at and near the water tank of the defendant and "while absorbed in his work, he hurriedly undertook to cross the track for the purpose of uncoupling the cars and, while so doing, his shoe on his right foot caught in the pipe or drain underneath the rail of the track, and he was thrown across the rail, thereby breaking his right leg and, in falling, the left leg was also broken below the knee." There is no doubt but that he suffered serious and painful injuries. The declaration alleges:

"The plaintiff avers that at the time of this accident he was engaged in interstate service and he files this suit under the Federal Employers' Liability Act. He avers that the defendant was guilty of negligence in constructing and maintaining the ditch as hereinbefore set out and that defendant failed to provide a safe place for the plaintiff to work, and that the plaintiff's accident and injuries are the direct and proximate result of said defendant's negligence. Plaintiff avers that he was not

guilty of any negligence that contributed to his accident and injuries.''

It is the contention of plaintiff that while he was engaged in a switching operation he had to pass a signal to the engineer and it became necessary to cross back and forth over the main line and the switch track. He states that he was running as he crossed the track and, while so running, his shoe was caught in the drain under the rail. It is further contended that the drain under the track was a hazard, and that, due to momentary forgetfulness and while engaged in an emergency operation, he suffered the injury complained of.

The plaintiff in error assigned the following errors on the second trial: (1) there is no evidence in the record to sustain the action of the court in granting the defendant's motion for a directed verdict made at the close of all the proof; (2) there is substantial and undisputed evidence in the record showing that both the plaintiff and the defendant were engaged in interstate commerce at the time this accident occurred; (3) the plaintiff did not assume the risk of the unsafe and negligent condition which brought about this injury because he momentarily became absorbed in the duties of his employment and forgot the presence of the ditch; (4) it was negligence for the railroad company to allow and maintain the open ditch in the manner described in this evidence at or near one of the busiest switches in the yard.

The Court of Appeals, in passing on the assignments of error by both parties, held as follows:

(1) The parties were engaged in interstate commerce at the time the accident occurred;

(2) There was no actionable negligence on the part of

the defendant in error in maintaining the ditch or drain as described and set out in the proof;

(3) That the plaintiff in error, W. E. Peters, was familiar with the drain and the surroundings and that he assumed the risk.

The plaintiff in his petition for *certiorari* complains of the alleged errors of the Court of Appeals in affirming the action of the trial judge in granting a new trial in the first instance and in dismissing his suit upon the second trial. We need not particularize the assignments of error in the plaintiff's petition. Upon the trial of the case the defendant relied specifically upon the following defenses: (1) there was no actionable negligence; (2) plaintiff knew of the condition of the tracks; (3) the Federal Employers' Liability Act did not apply because defendant was not engaged in interstate commerce. The assignments of error present but one question: Was the trial judge in error in sustaining the defendant's motion for a directed verdict?

We are convinced that the Court of Appeals has reached the correct conclusion in this case. We pass from the alleged error complained of by the defendant, that the Court of Appeals committed error in holding that the defendant was engaged in interstate commerce at the time of the accident. On the question of whether or not there was sufficient evidence to take the case to the jury, this involves whether plaintiff's injuries were caused "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed," etc. 45 U. S. C. A., section 51.

The Court of Appeals, in discussing the roadbed and water drain where plaintiff was injured, says:

"There is no dispute about the facts. Defendant had a water tank located at Old Hickory which was used to water its engines. Running from this water tank a short distance by the side of the track was a small drain about four or five inches deep and then this drain went under the track between the crossties in a drain that was about four to six inches deep and went into a pipe and passed under another track of the defendant company. Excellent pictures of this drain are in the record. This drain carried overflow water from the tank and also surface water. The question is, does the maintenance of this drain by the defendant Railroad Company constitute negligence on the part of the Company? It is further shown that the standard cross-tie is seven inches thick and nine inches wide and the standard method of putting ballasts on the track is to form a turtle-back at the central part between the rails and let the ballasts slope gradually each way with a clearance of two inches from the bottom of the rail to the top of the ballasts. Therefore, the drain about which plaintiff complains was only two to four inches lower than the standard method of placing ballasts on the tracks at the point where the rail is laid on the track. That being true plaintiff might have hung his toe under the rail of the track at any point on the track where the track had ballasts on it in the standard manner because there would be two inches from the bottom of the rail to the ballasts.

"It is our opinion that the maintenance of this drain by the Railroad Company did not constitute actionable negligence. *Delaware, L. & W. R. Co.* v. *Koske*, 279 U. S., 7, 49 S. Ct., 202, 73 L. Ed., 578."

▮ We find very little, if any, difference in the evidence on the question of plaintiff's assumption of the risk. There can be no doubt that plaintiff knew all about

this drain. He had switched cars over it and near it for six or seven years. The drain was not concealed in any way. While this suit is governed by the Federal Employers' Liability Act, yet, the defendant may rely upon the assumption of the risk by the employee. See *Seaboard Airline Ry.* v. *Horton,* 233 U. S., 492, 34 S. Ct., 635, 58 L. Ed., 1062, L. R. A., 1915C, 1, Ann. Cas., 1915B, 475; *Jacobs* v. *Southern Ry. Co.,* 241 U. S., 229, 36 S. Ct., 588, 60 L. Ed., 970; also *Delaware, L. & W. R. Co.* v. *Koske,* 279 U. S., 7, 49 S. Ct., 202, 73 L. Ed., 578.

While the petitioner has undertaken to distinguish the *Koske Case* from the facts of the instant case, we think it is very much in point. The distinction sought to be made is that the alleged defect in the roadbed was "within six or eight feet of the busiest switch in Old Hickory yard"; whereas, in the *Koske Case* it does not clearly appear where the defect was located. However that may be, counsel concedes that the plaintiff knew all about it and that "it was at a point where the conductor and brakemen in doing their work were forced to cross over it continually."

█ The counsel would have us apply the doctrine of momentary forgetfulness to the instant case, based upon the contention that the switching operation constituted an emergency. We fail to find in the record that this particular operation was different from any other similar operation in railroad yards. Every such operation carries with it a certain degree of risk and danger. In the first place, the condition complained of was not in and of itself a dangerous or a negligent condition. We think the Court of Appeals was correct in finding that "the facts here present a case of ordinary risk." In discussing the question of liability in a case showing ordinary risk, the Court of Appeals quotes the following

from *Draper* v. *Louisville & N. R. Co.*, 17 Tenn. App., 213, 216, 66 S. W. (2d), 1003, 1005:

"The risks assumed by an employee are of two kinds, ordinary and extraordinary. The ordinary risks are those that are normally incident to an occupation in which an employee voluntarily engaged. An employee is conclusively presumed to have knowledge of such risks and assumes the risk of injuries arising therefrom.

"Such ordinary risks are assumed by an employee whether he is actually aware of them or not; for the dangers and risks that are normally or necessarily incident to his occupation are presumably taken into account in fixing his rate of wages." (Citing Authorities.)

We think the rule is well stated in the above case. It was said, moreover, in *Delaware, L. & W. R. Co.* v. *Koske, supra* [279 U. S., 7, 49 S. Ct., 204, 75 L. Ed., 578]:

"And, except as provided in section 4 of the act [45 U. S. C. A., section 54] the employee assumes the ordinary risks of his employment; and, when obvious or fully known and appreciated, he assumes the extraordinary risks and those due to negligence of his employer and fellow employees."

But plaintiff seeks to escape from the foregoing rule of assumption of the risk by invoking the rule of momentary forgetfulness. May one who is engaged in performing his ordinary task legally absolve himself from the duty to exercise due care by asserting that at the time of the injury he was in a hurry and momentarily forgot about a known danger? We think this is something quite apart from momentary forgetfulness due to some cause which is calculated to divert his attention from his ordinary duties. In the latter case the thing that diverts attention might be sufficient to cause anyone to forget an obvious danger for the moment,

and the cases cited by counsel for plaintiff Peters would apply. But the cause for being in a hurry may result from a sudden impulse, and a matter of trifling importance, as where the employee considers he must be in a hurry to make up some lost time, or must hurry to correct a signal to his engineer so that the latter may be saved some switching operation, or save himself from throwing an extra switch, or prevent the train from being a few minutes late at the next station. Such causes for haste furnish no basis for applying the rule of momentary forgetfulness; otherwise, everyone engaged in the performance of his ordinary task, no matter how obvious and well known the danger, could absolve himself from the duty of avoiding it by merely contending that he was in a hurry and forgot about it. How different the situation would be if the injured employee was in a hurry to prevent a train wreck, or some other injury to person or property. In these circumstances there is not only something natural and reasonable for diverting one's attention in the performance of ordinary duties, but a real cause for making haste.

This Court in *Mayor & Aldermen* v. *Cain*, 128 Tenn., 250, 256, 159 S. W., 1084, 1086, Ann. Cas., 1915B, 762, made the same distinction and, in distinguishing it from *City of Knoxville* v. *Cox*, 103 Tenn., 368, 53 S. W., 734, cited by counsel for plaintiff, says:

"Therefore, while it is true, as laid down in [*City of*] *Knoxville* v. *Cox*, that the mere fact of a temporary lapse of memory in presence of a known danger is not always proof of negligence, yet we think this must be understood with the qualification above indicated; that is, that such lapse must be shown to have reasonable cause, one which is apart from mere inattention. The duty of everyone in presence of a known danger is to give heed,

and to walk with care; yet the law recognizes the truth that men are imperfect, that few have adequate command of their faculties, emotions, and propensities, and the power of steady attention, and that most are easily moved from the due balance of mental composure. So it is the exceptions we have mentioned, and others like them, are tolerated out of tenderness to the weakness of human nature. But we do not think we should go the length of holding that every lapse of memory is excusable. Such a rule would breed fraud, and put an end to the responsibility of plaintiffs for the exercise of due care, or at least render impossible the enforcement of it when interest prompts deception and weakness yields to it.''

The judgment of the Court of Appeals is in all things affirmed.