DR. JOHN L. PEARCE and DR. E. GENE LYNCH, Plaintiffs in Error v. MRS. GIPSIE F. CANADY, Defendant in Error.—373 S. W. (2d) 617.

Eastern Section, at Knoxville. May 17, 1963.

Certiorari Denied by Supreme Court December 5, 1963.

344

Sam Jack Anderson, Morristown, for plaintiffs in error.

Taylor & Inman, Morristown, and Edward Hurd, Newport, for defendant in error.

BEJACH, J. This cause involves an appeal in error by Drs. John L. Pearce and E. Gene Lynch, who were defendants in the lower court, from a judgment against them in the sum of $5,000 recovered by the plaintiff, Mrs. Gipsie F. Canady. The parties will be hereinafter referred to as plaintiff and defendants, or called by their respective names.

Defendants were and are the owners and operators of the Doctors Hospital and Clinic in Morristown, Tennessee. Plaintiff was a practical nurse who had been employed by Mrs. Harold Bowers on April 3, 1962 to nurse her husband, Mr. Harold Bowers, who was a patient in the Doctors Hospital and Clinic. Mrs. Canady, the plaintiff in this cause, was one of three practical nurses who were employed in eight hour shifts to attend Mr. Bowers around the clock. Mr. Bowers was being treated in defendants' hospital, according to the testimony of Dr. Lynch, for a peptic ulcer and a "bizarre neurological difficulty". Mrs. Canady was serving on the shift from 7:00 A.M. to 3:00 P.M. At the time she took over her duties on April 3, 1962, she was told by Mr. Carroll Seals, a man practical nurse, who preceded her in the shift from 11:00 P.M. to 7:00 A.M., and on whose recommendation Mrs. Canady had been employed, that Mr. Bowers was "getting over a drunk". Mrs. Canady reported to the head nurse, Miss Carlisle, whose office was immediately adjoining Room 16 of which Mr. Bowers, along with another patient, was an inmate. Mr. Bowers was being treated with intermittent doses of paraldehyde and whiskey. Paraldehyde was administered to Mr. Bowers by the regular nursing staff of defendants' hospital, but Mrs. Canady was instructed to go to the chart room to obtain the whiskey which

was also being administered to Mr. Bowers. Plaintiff testified that the only instructions given her by Miss Carlisle, the Director of Nurses, was to go to the chart room for the whiskey as needed. According to the testimony of Dr. Lynch, one of the defendants, which testimony is uncontradicted, the acceptance of Mr. Bowers as a patient in defendants' hospital was conditioned on his being attended, "around the clock", by practical nurses, and orders were given that he was not to be left alone. Mrs. Canady worked, without incident material to this litigation, on April 3, 4, and 5 of 1962, and was at work on April 6, 1962 when the accident which resulted in this litigation occurred. On April 6, 1962, at 7:00 A.M. when plaintiff went to work, she said that Mr. Bowers seemed to be improved. Shortly after her arrival on that morning, Mr. Bowers expressed a desire to go to the bathroom, and plaintiff testified that she offered to go with him, but that he insisted on going alone. Plaintiff helped him out of bed and into his bathrobe and slippers. While he was gone she straightened his bed, and "tidied up" his corner of the room. A few minutes later, plaintiff heard her patient call to her in a weak voice from outside the room. Plaintiff went to him, finding him leaning against the wall just outside of his room, facing the wall, and with his hands on the wall. Plaintiff put her arms around the patient and started moving back toward the room in order to assist the patient into bed. According to plaintiff's testimony, she called for help at that time, but received no response. The nurses in the chart room adjacent to Room 16, which was the patient's room, and a Mrs. Grace Collins, a patient who was lying on a cot in the hall just outside the door of Room 16, testified that they did

not hear her call. At any rate, after plaintiff had maneuvered her patient into Room 16, and was "walking" him towards his bed, her right leg twisted out from under her and the patient fell, landing "on top of her". The commotion created by this fall was heard in the chart room, causing Misses Carlisle, Cardwell and Carson to rush into Room 16 where they found Mr. Bowers and plaintiff on the floor, with Mr. Bowers hemorrhaging from his mouth and bowels. The hospital nurses put Mr. Bowers into his bed and went to the assistance of Mrs. Canady.

Plaintiff was hospitalized in defendants' hospital, where it was discovered that she suffered a "depressed fracture" of the tibia, which is the large bone in the leg below the knee. The fracture was located at the knee joint, and some of the ligaments in that vicinity were torn, also. Mrs. Canady had previously experienced an injury to this same leg. After a few days in defendants' hospital, plaintiff was transferred to the Knoxville Orthopedic Clinic in Knoxville, Tenn., where she was treated by Dr. David N. Hawkins, an orthopedic specialist.

In plaintiff's declaration, filed in this cause, she alleges six specific acts of negligence, which are as follows:

"(1) In not providing bathroom facilities for said patient in his room, so that he was not required to undertake to travel some eighty feet to the rest room;

"(2) In failing to provide the necessary orderlies, nurses and attendants to insure that the patient could get to and from the rest room in safety;

"(3) In allowing and permitting the patient, in such a condition, to leave his bed and his room, and go to the rest room;

"(4) In cluttering the passage-way and hall outside said patient's room, and thus making it difficult for a person in a sick and unsteady condition to traverse said area;

"(5) In failing and refusing to give to the plaintiff and said patient the necessary assistance after said emergency situation arose, when said emergency situation was known, or should have been known, to the agents and servants of the defendants;

"(6) In failing to adopt, promulgate and enforce rules and regulations for the treatment of a patient in such condition, which would insure the safety of the plaintiff while an invitee on the premises."

At the trial before Hon. John R. Todd, Circuit Judge of Hamblen County, Mrs. Canady testified on behalf of herself, introduced the testimony of Dr. John H. Kinser, and read the pretrial deposition of Dr. Gene Lynch. Dr. Gene Lynch also testified on behalf of defendants and introduced the testimony of nurses Sue Carlisle, Margaret Cardwell and Frances Carson, the medical deposition of Dr. Hawkins of Knoxville Orthopedic Clinic, and the testimony of Mrs. Grace Collins, the patient who was on the cot in the hall outside Room 16. After conclusion of all the testimony, defendants moved for a directed verdict, which was overruled, and the cause was submitted to the jury which, as stated, returned a verdict in favor of plaintiff in the sum of $5,000. After motion for a new trial had been overruled, defendants perfected their appeal in error to this court.

In this court, defendants, as appellants, have filed two assignments of error which raise but one question, which is whether or not defendants' motion for a directed verdict should have been granted. Said assignments of error are: That the trial court erred in not directing a verdict for defendants at the close of all the proof, and that there was no competent evidence introduced on which the jury could base a verdict.

■ We are of opinion that defendants' assignments of error should be sustained, and this cause dismissed. In this cause, plaintiff seeks a recovery, and so far, has been successful, simply because her patient, she being a practical nurse, fell onto her causing her right knee, which had been previously injured, to twist and give way so that she fell with her patient falling on top of her, breaking her leg. We find in the record no actionable negligence on the part of defendants, applicable to the facts of this case, which entitles plaintiff to have her cause submitted to a jury. Plaintiff claims that she was an invitee on the premises of defendants, and, consequently, that defendants owed toward her a higher degree of care than would have been owed if she had been a registered nurse employed by defendants' hospital; but, even treating her as an invitee, there is no proof of negligence on the part of the defendants.

■■ Negligence is never presumed from the happening of an accident. Negligence must be proven. DeGlopper v. Nashville Ry. & Light Co., 123 Tenn. 633, 134 S. W. 609, 33 L. R. A., N. S., 913; Nohsey & Schwab v. Slover, 14 Tenn. App. 42, 45. Even if we should assume that defendants were in some respects guilty of negligence, and that such negligence was established by the

proof, it would still be apparent that no such alleged negligence constituted any part of the proximate cause of plaintiff's injuries, and proof of negligence, without connecting proof of causal connection therewith, cannot entitle plaintiff to a recovery. Olson v. Sharpe, 36 Tenn. App. 557, 577-578, 259 S. W. (2d) 867. From the opinion of Presiding Judge McAmis in that case, we quote:

"A mere finding of negligence will not support a recovery. It must also appear that the negligence relied upon was a proximate cause of the injury and resulting damage." Olson v. Sharpe, 36 Tenn. App. 578, 259 S. W. (2d) 876.

██ Furthermore, the plaintiff, a practical nurse, of more than twenty-three years experience in that occupation, must be held to have assumed the risk of such accidents as that which actually occurred and caused her injuries. Plaintiff was not an employee of defendants. She claims only as an employee of Mr. and Mrs. Bowers, and, as such employee, she claims the rights of an invitee. As such, the only duty owed to plaintiff by defendants was that of furnishing her a safe place to work and of warning her of any danger known to them but not known by or apparent to plaintiff. The law on this subject is well stated by the opinion of this court, Eastern Section, in the case of Kendall Oil Co. v. Payne, 41 Tenn. App. 201, 293 S. W. (2d) 40. From the opinion of Presiding Judge McAmis in that case, we quote as follows:

"The liability of the proprietor of a place of business to which the public is invited is based upon the duty to keep his premises in a reasonably safe

condition for all persons who are lawfully on his premises and in the exercise of due care for their own safety. Dolan v. Bry Block Merc. Co., 23 Tenn. App. 47, 51, 126 S. W. (2d) 376. Liability is sustained on the ground of the owner's superior knowledge of a perilous condition on his premises and he is not liable for injuries sustained from dangers that are obvious, reasonably apparent or as well known to the invitee as to the owner. Illinois Cent. Ry. Co. v. Nichols, 173 Tenn. 602, 118 S. W. (2d) 213; Park v. Sinclair Refining Co., 24 Tenn. App. 204, 142 S. W. (2d) 321; 38 Am. Jur. 757, 758. The invitee assumes all normal or obvious risks attendant on the use of the premises. Gargaro v. Kroger Grocery & Baking Co., 22 Tenn. App. 70, 118 S. W. (2d) 561; 65 C. J. S. Negligence sec. 50, p. 541.'' Kendall Oil Co. v. Payne, 41 Tenn. App. 205-206, 293 S. W. (2d) 42.

In the instant case, plaintiff being a woman of about 110 pounds in weight, and having suffered a former injury to her right knee, should have anticipated, and certainly as much so as the defendants, that her patient who weighed, 180 to 190 pounds, might fall or cause her to fall. But, it is insisted on behalf of plaintiff that defendants should have warned her of the ''bizarre neurological condition'' for which Mr. Bowers was being treated, as testified to by defendant Dr. Lynch, which condition, she claims, increased the probability that he would fall. We think this contention is without merit, because plaintiff herself testified that she was informed and believed that Mr. Bowers was ''getting over a drunk'', and that the symptoms of and treatment for that were the same as was being administered.

The law on the subject of assumption of risk is stated in the opinion of Mr. Justice Neil, later Chief Justice, for the Supreme Court in the case of Peters v. Tenn. Cent. Ry. Co., 179 Tenn. 509, 515, 167 S. W. (2d) 973, as follows:

"We find very little, if any, difference in the evidence on the question of plaintiff's assumption of the risk. There can be no doubt that plaintiff knew all about this drain. He had switched cars over it and near it for six or seven years. The drain was not concealed in any way. While this suit is governed by the Federal Employers' Liability Act, yet, the defendant may rely upon the assumption of the risk by the employee." Peters v. Tenn. Cent. Ry. Co., 179 Tenn. 515-516, 167 S. W. (2d) 975.

█ But it is insisted on behalf of plaintiff, that the doctrine of assumption of risk is applicable only in master and servant cases, or in those created by the obligation of a contract. Such, however, is not the law. From 38 Am. Jur. Negligence, sec. 171, p. 845, we quote as follows:

"The principle that one who voluntarily assumes the risk of injury from a known danger is debarred from a recovery is recognized in negligence cases. As stated, a plaintiff who by his own conduct, has brought himself within the operation of the maxim 'volenti non fit injuria' cannot recover on the basis of the defendant's negligence. In the words of the maxim as translated, 'That to which a person assents is not esteemed in law an injury.' Although there is authority for confining the doctrine of assumption of risk to cases involving a contract rela-

tionship, it is now fairly well settled that the defense of assumed risk may exist independently of the relation of master and servant. The maxim 'volenti non fit injuria', applies in a proper case independently of any contract relation. It is said that one who knows, appreciates, and deliberately exposes himself to a danger 'assumes the risk' thereof.''

More specifically, that the doctrine of assumed risk is not limited, in Tennessee, to master and servant cases is established in the able opinion of Special Judge W. P. Moss, written for this court, Western Section, in the case of Gargaro v. Kroger Grocery & Baking Co., 22 Tenn. App. 70, 118 S. W. (2d) 561. From that opinion, we quote as follows:

"The doctrine of assumed risk, sometimes (as in Hatch v. Brinkley, 169 Tenn. 17, 80 S. W. (2d) 838), referred to as incurred risk, is usually applied to contract cases growing out of the relation of master and servant, but such is not always the case. The application of the doctrine is often simply another way of applying the rule of contributory negligence, and frequently the difference between the two is merely a difference in the choice of language or style of expression. In other words, the fact that one knows of potential danger and voluntarily subjects himself thereto may and often does render him contributorily negligent if accident or injury ensues. An appropriate statement along these lines is found in Loew's Nashville & Knoxville Corporation v. Durrett, 18 Tenn. App. 489, at page 503, 79 S. W. (2d) 598 [at page 606],

\* \* \* \* \* \*

"The cases of Bouchard & Sons Co. v. Keaton, 9 Tenn. App. 467, 481, and Loew's Nashville & Knoxville Corp. v. Durrett, 18 Tenn. App. 489, 503, 79 S. W. (2d) 598, and numerous cases reviewed in both of them, are referred to for authorities applying 'volenti non fit injuria' independently of the relation of master and servant." Gargaro v. Kroger Grocery & Baking Co., 22 Tenn. App. 75, 77-78, 118 S. W. (2d) 564.

In the instant case, it is our opinion that even when viewing the evidence most strongly in favor of plaintiff, there is no proof of any actionable negligence on the part of the defendants which could have constituted the proximate cause of plaintiff's injuries, and that, on the undisputed proof, plaintiff must be held to have assumed the risk of such an accident as that which actually occurred and caused her injuries. It results that defendants' assignments of error must be sustained. The judgment of the lower court will be reversed and this cause dismissed.

The costs of the cause will be adjudged against the plaintiff, Mrs. Gipsie F. Canady, and the sureties on her cost bond filed in the lower court.

Carney, J., concurs.

Avery, (P.J.,W.S.), concurs in result.

AVERY, (P.J.,W.S.), (concurring in result).

To me assumption of risk can have no application except through a contractual relationship of some character. The plaintiff contracted with the patient, and not the defendants, to take care of him under conditions which she must have realized she was assuming such

risk as the care of a patient would require. She permitted the patient to go to the bathroom. He left the bathroom, went into the hall apparently without her knowledge. He fell upon her as she undertook to get him back in the bed, and she was injured in that fall. Thus the assumption of the risk was through the contract with the patient who paid her for her services.

I can not see how that, as long as we have our contributory negligence law in effect as we now charge the juries we can substitute ''assumption of risk'' for ''contributory negligence''. Assumption of risk, as I view it, can grow out of nothing other than a contractual relationship of some character. It could be a contract that did not require monetary consideration, but which had other considerations of a valuable mutual nature.

I think my colleague has written a very fine opinion, but I felt I must express myself as related to my statement that I ''concur in result.''