Helen S. SHARP and Rex P. Sharp,
Plaintiffs-Appellees,

v.

J. C. PENNEY COMPANY, Inc.,
Defendant-Appellant.

No. 16483.

United States Court of Appeals
Sixth Circuit.

June 10, 1966.

O'Sullivan, Circuit Judge, dissented.

J. W. Mills and Jonathan H. Burnett, Knoxville, Tenn., Frantz, McConnell & Seymour, Knoxville, Tenn., of counsel, for appellant.

Benton H. Jones, Knoxville, Tenn., Asquith, Ailor & Jones, Knoxville, Tenn., of counsel, for appellee.

Before O'SULLIVAN and CELE-BREZZE, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

In this case the defendant-appellant, J. C. Penney Company, Inc., appeals from a judgment entered against it in the United States District Court for the Eastern District of Tennessee, Northern Division. Helen S. Sharp and her husband Rex P. Sharp, plaintiffs-appellees, brought the action in the District Court to recover damages suffered as a result of the alleged negligence of the defendant-appellant in the maintenance and operation of its store in the city of Knoxville.

Jurisdiction of the District Court was invoked by reason of diversity of citizenship (Section 1332. Title 28, U.S.C.) the amount in controversy being in excess of $10,000. The case was tried to a jury. Verdicts were returned in favor of Helen S. Sharp for $9,000. and for her husband in the sum of $1,000. Judgment was entered upon these verdicts and this appeal followed. The action of Rex P. Sharp is a derivative one, his right to recover being dependent upon a recovery by his wife. We will not consider him further in the discussion of this appeal.

The other parties will be referred to as plaintiff and defendant, respectively.

In the early afternoon of March 19, 1963, the plaintiff went to the store of the defendant to purchase a dress. She took an elevator to the second floor, made her purchase and returned to the area in which the elevators were located to await one to take her down to the first floor. As she moved to take the first down elevator, she came in contact with a platform upon which there were two mannequins for display. She alleges this caused her to fall and resulted in the injuries of which she now complains.

In her complaint she charges the defendant with negligence as follows: That it placed the platform in such a position that it protruded into the aisle or passageway and was a hazard and obstruction to customers using the elevators; that it was so constructed that the front of it was open between the floor and the base of the platform; and that the base was concealed by a covering of artificial grass.

There were three elevators, numbered one, two and three, at the store location now under consideration. While waiting for an elevator, the plaintiff, according to her testimony, took a position about three feet from the entrance of the door to elevator number one. She was standing upon the carpet just before the tile area. (Hereinafter described) She said, in answer to a question, that she was about five feet "from the elevator door back toward the hat bar". The platform was three or four feet from her, to her left and back of her. Elevator number three was the first down elevator to stop at the second floor. When it stopped, she veered to the left and moved in a diagonal direction toward this elevator. There were people getting off of the elevator and other people to her right going toward the elevator. As she was moving to the left and in the direction of the elevator, the toe of her left shoe struck the front of the platform and caused her to fall.

The platform involved in the accident or an identical one was in the courtroom at the time of the trial. It was two and a half feet wide by four feet long and was six inches high. There was no open space between the base of the platform and the floor of the room, but the base extended two inches over the sides and ends. The base or floor of the platform was covered with artificial grass which was tacked under the extension of the base. In the consideration of this appeal it becomes important to know just where this platform was placed in relation to aisles and passageways for customers. We have been unable to find from the testimony any accurate word description of its location in relation to other parts of the store, such as the hat bar, mentioned in the testimony, and elevators and passageways to other parts of the store. Witnesses were shown photographs from which they identified places and directions as "here", "there", "this way", "that way", and "you mean this elevator that would be over here (indicating)?" etc. With the aid of photographs introduced into evidence as exhibits and from the oral testimony it appears that the physical arrangement of the store on the date of the accident, in the area where the platform was located, was as follows:

As one faced the elevators they were numbered from right to left, one, two and three. The floor in front of the elevators was covered with a composition tile, made up of blocks nine inches square, colored brown and yellow. This tiling extended eleven and one half feet in front of the elevators to what has been referred to as a hat bar. There were two pillars opposite the elevators. Between these pillars and flush with the sides facing the elevators were the counters or tables of the hat bar. The hat bar then was parallel to the wall of the elevators and the entire floor of this area was covered with the brown and yellow tile. The tiling ended approximately two feet to the right of the entrance of elevator number one and in a straight line at about two feet to the left of the hat bar as one faced it. Beyond this tiled area the floor was carpeted. Apparently there was a passageway through the hat

bar without going around it on to the carpeted area just mentioned. It appears that the front of the platform upon which the mannequins were placed was four and one half feet in front of the hat bar and seven feet from the elevators. The side of the platform toward the carpeted area was seven feet from the line between the tile and carpet. There was a wall with an exit door in it at the end of this tiled area just to the left of elevator number three. Aside from the platform in question the tiled area was entirely open and clear for the passage of customers.

 Since this case is a diversity case, it is governed by the law of Tennessee. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The questions presented on this appeal concern the sufficiency of the evidence to support the verdict of the jury. First, Did the act of the defendant in placing the platform in its position at the time of the accident raise a question of negligence of the defendant to be submitted to the jury? Second, Was the plaintiff guilty of contributory negligence, which proximately caused her injury, as a matter of law? and Third, Was she guilty of remote contributory negligence?

 At the time of the accident the plaintiff's legal relationship to the defendant was that of an invitee on its premises. The duty of a proprietor of a place of business to an invitee is stated in Kendall Oil Company v. Mike Payne, 41 Tenn.App. 201, 205, 293 S.W.2d 40, 42, as follows:

"The liability of the proprietor of a place of business to which the public is invited is based upon the duty to keep his premises in a reasonably safe condition for all persons who are lawfully on his premises and in the exercise of due care for their own safety. (Citations omitted.) Liability is sustained on the ground of the owner's superior knowledge of a perilous condition on his premises and he is not liable for injuries sustained from dangers that are obvious, reasonably apparent or as well known to the invitee as to the owner."

See also Pearce v. Canady, 52 Tenn.App. 343, 373 S.W.2d 617; Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, 394, 242 S.W. 646; Phillips v. Harvey Co., 196 Tenn. 174, 264 S.W.2d 810.

 It appears from the physical surroundings of the defendant's store at the time and place of the accident that the place where the platform was located was designed and was intended to be used as a passageway for customers getting on and off of the elevators. Mr. J. D. Carroll, defendant's second floor manager, testified that the area in question was used for this purpose. Miss Olivia Simpson testified that this area was used by people going to and from the elevators. Mr. K. C. Jones testified that the platform was placed some five feet in front of the hat bar into the area, in front of the elevators, so that customers would have a better view of it. We think that the jury might well find that this area was designed for the passage of customers and that the platform as it was placed constituted an obstruction to the customers in this part of the store. Under these facts there was material evidence of defendant's negligence and a factual question was presented. Generally the placing of an obstruction in an aisle or area designed for the passage of customers raises a question of negligence for the determination of the jury. See McLellan Stores Company v. Weaver, 238 F.2d 232, C.A.6 (Tenn.); Armstrong v. Kroger Grocery & Baking Co., Mo.App., 78 S.W.2d 564, cited with approval in Gargaro v. Kroger Grocery & Baking Co., 22 Tenn.App. 70, 74, 118 S.W.2d 561; White v. Herpolsheimer Co., 327 Mich. 462, 42 N.W.2d 240, 26 A.L.R.2d 667; Phillips v. Montgomery Ward & Co., 125 F.2d 248, C.A.5 (Miss.); Dowling v. MacLean Drug Co., 248 Ill.App. 270; Nye v. Liggett Company, 224 Mass. 401, 113 N.E. 201; Sears, Roebuck & Co. v. Geiger, 123 Fla. 446, 167 So. 658; Petey v. Larson, 28 Wash.2d 790, 183 P.2d 1020; Polenske v. Lit Bros., 18 Pa.Super. 474; Sanitary Grocery Co. v. Stein-

brecher, 183 Va. 495, 32 S.E.2d 685; Hodge v. Weinstock, Lubin & Co., 109 Cal.App. 393, 293 P. 80.

In Gargaro v. Kroger Grocery & Baking Co., cited above, the court said,

"(T)hat in considering a motion for directed verdict on behalf of the defendant, the inquiry should be whether there is any material evidence which, together with all reasonable inferences favorable to the plaintiff which may be drawn therefrom, reasonably tends to support the cause of action as stated in the plaintiff's declaration and as shown by the proof. If there is any such material evidence, the jury should be allowed to decide, upon a proper charge, whether the defendant is negligent or the plaintiff contributorily negligent."

In Kendall Oil Co. v. Payne, supra, the court said 41 Tenn.App. at p. 206, 293 S.W.2d at p. 42, "Generally, whether or not the owner has exercised the required degree of care in maintaining his premises is a question of fact for the jury." See also Lackey v. Metropolitan Life Ins. Co., 30 Tenn.App. 390, 206 S.W.2d 806, 810.

■ Contributory negligence is generally a question of fact and we think this case is no exception.

"Generally, where the question of contributory negligence is involved, whether a defect is of such a nature that a person coming upon the premises should observe and avoid it is for the jury." Kendall Oil Co. v. Payne, supra, 41 Tenn.App. at p. 206, 293 S. W.2d at p. 43.

■■ The time of this accident was shortly before Easter and the store was crowded. A number of people were moving with the plaintiff toward the elevators. Whether the defendant was guilty of proximate negligence under the circumstances was properly submitted to the jury. Under Tennessee law a plaintiff may be guilty of remote contributory negligence and not be barred from recovery, but the damages are reduced accordingly.

■ Unless contributory negligence would be so obviously a proximate cause of the accident that the court could say it was negligence as a matter of law, it would be necessary to charge contributory negligence both as proximate and remote causes. Contributory negligence as a remote cause could not be explained to the jury without first defining it as proximate cause. We do not consider that under the facts of this case we can say that the plaintiff was guilty of proximate contributory negligence as a matter of law. Remote contributory negligence then becomes an issue in the case. The jury returned general verdicts and we do not know on what basis it arrived at its conclusion. Considering that the amounts of the verdicts were small in comparison with the amounts prayed for in the complaint and the nature of the plaintiff's injuries, it might well be that the jury found her guilty of remote contributory negligence.

In Elmore v. Thompson, 14 Tenn.App. 78, the court said,

"In order to defeat the plaintiff's recovery his negligence must not only have contributed to his injuries, but it must have contributed thereto as a proximate cause and not as a remote cause or mere condition.

"The inquiry as to what is the proximate cause of the injury, like that of negligence, is always for the jury, unless the determinative facts are undisputed and are reasonably susceptible of but one inference."

Our conclusion is that there was sufficient evidence to go to the jury on all questions involved.

The judgment of the District Court is affirmed.

O'SULLIVAN, Circuit Judge (dissenting).

Viewing the evidence most favorably to plaintiffs, I am unable to find any evidence from which a jury could find actionable negligence. I think defendant was entitled to a directed verdict and, therefore, would reverse with direction to vacate the judgment and dismiss the complaint.