Lowry M. STEHN, a Minor, Who Sues by His Mother and Next Friend, Mrs. Juanita Ponder, and Mrs. Juanita Ponder, Plaintiffs-Appellees,

v.

BERNARR MacFADDEN FOUNDATIONS, INC., Defendant-Appellant.

No. 20201.

United States Court of Appeals, Sixth Circuit.

Dec. 2, 1970.

Charles L. Cornelius, Jr., Nashville, Tenn., (James F. Neal, Cornelius, Collins, Neal, Higgins & White, Nashville, Tenn., on the brief), for appellant.

William J. Harbison, Nashville, Tenn. (Thomas H. Peebles, III, Charles C. Trabue, Jr., Nashville, Tenn., on the brief), for appellees; Trabue, Minick, Sturdivant & Harbison, Nashville, Tenn., of counsel.

Before PHILLIPS, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

PECK, Circuit Judge.

Plaintiffs-appellees, a minor suing by his mother and next friend and the mother suing on her own behalf, brought this action to recover damages on account of injuries suffered by him. These injuries were suffered when as a student in a private school operated by the defendant-appellant he was participating in a wrestling program. Based on a jury verdict, judgment in his favor was entered by the District Court in the sum of $375,000 and in favor of his mother in the sum of $10,000. Defendant-appellant perfected this appeal from an order overruling its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

At the time of the incident resulting in injury, plaintiff (the parties herein will be referred to as they were in the trial court, and the term "plaintiff" will refer to the minor unless otherwise indicated) was fifteen years of age, having passed his fifteenth birthday approximately one month earlier. He was in the eighth grade at the defendant's school, which he had attended the two preceding years, and was participating in wrestling for the first time. He had met with the wrestling class for about six weeks prior to the occurrence, and had attended sessions four times a week. The instructor, or coach, had himself wrestled as a cadet at this same school and had subsequently wrestled for one season in military service, for the 11th Airborne Division in Europe, but his only previous coaching experience had been for one season seven years earlier, also in Europe. At the time of his injury plaintiff weighed 137 pounds, and was wrestling a boy who weighed 150 pounds.

Either at the precise moment of plaintiff's injury or immediately prior thereto his opponent (Lonnie Gregor) had applied what is referred to continually throughout the testimony, the trial court's instructions to the jury and the briefs in this court as the "agura" or "agura hold." However, no witness, including those who qualified as experts in the field of wrestling, had ever heard the term "agura" before, and counsel advise that it has not been found in any standard works on the sport. Further, while the "agura" is thus generally referred to as a hold, it seems clear from the testimony of the witnesses that it should more accurately be termed a maneuver, in the course of which one's opponent is turned from a face-down position on the mat to a face-up position so that he might be "pinned."

In such school wrestling, in commencing a bout one of the participants assumes what is referred to as the "referee's position," in which he is on his hands and knees, with the other participant standing over him. In this instance, plaintiff assumed the referee's position, and upon the commencement of the bout Gregor executed the "agura" maneuver. Either during it or immediately after its completion, plaintiff suffered the injury complained of, which consisted of a broken neck and a severance of the spinal cord.

While the foregoing statement of the occurrence is supported by essentially uncontroverted portions of the record, other aspects of the incident are in issue. For example, although the "agura" movement apparently is calculated to rotate one's opponent by rolling him over

on a head to toe axis, there is evidence to support plaintiff's contention that the change of position from face-down to face-up was here accomplished by a somersault type movement. Further, while plaintiff contends that he suffered injury when in a face-up position, there is some evidence to support defendant's contention that he was face-down when injured. In the face of such conflict, we are required to assume that the jury by its verdict resolved the factual issues favorably to the plaintiff. Kroger Co. v. Giem, 215 Tenn. 459, 387 S.W.2d 620 (1964); Sneed v. Henderson, 211 Tenn. 572, 366 S.W.2d 758 (1962).

While other issues were presented to the District Court in the post-judgment proceedings, the sole issue on appeal is whether the trial court erred in refusing to grant the defendant's motion for a directed verdict at the conclusion of all the proof on the ground that the evidence was insufficient to support a verdict against defendant. The parties are in essential agreement as to such statement of the issue, but stated with greater specificity we conceive the issue to be whether the operator of a private school is liable for damages resulting from injury to a student proximately caused by its negligence in failing to provide proper instruction and supervision in connection with the activity of wrestling, and in conducting that activity. As summarized by the District Judge in his instructions to the jury, plaintiff contended that defendant, as owner and operator of the Castle Heights Military Academy attended by plaintiff, was negligent in not providing proper wrestling instructions and supervision, in requiring the plaintiff to wrestle two matches on the same afternoon with two boys heavier than himself, in failing to provide one or more assistant coaches, in improperly instructing the participants, including the plaintiff and Gregor, in the "agura" maneuver or hold so that it would be clear to the participants how it should be performed or executed, and without teaching any escape therefrom on the part of the defensive wrestler, in permitting two wrestling matches to be conducted simultaneously so that the coach could not observe them closely, in improperly delegating "the important function of refereeing" the match in which plaintiff and Gregor were engaged to another student in plaintiff's class, and in teaching a hold involving the degree of risk inherent in the "agura" to students of this age group. The defendant's contentions as summarized in the jury instructions categorically denied those of the plaintiff, it being defendant's argument that its instruction, supervision and conduct of the wrestling activity was free from negligence.

To a considerable degree positions urged by the defendant reflect accurate legal propositions. Thus it is recognized that the burden of proving negligence and proximate cause is upon the plaintiff (Pearce v. Canady, 52 Tenn.App. 343, 373 S.W.2d 617 (1963)), that negligence is not to be presumed from the mere happening of an accident (Williams v. Jordan, 208 Tenn. 456, 346 S. W.2d 583 (1961); Pearce v. Canady, *supra*) that even where defendant's negligence is proved, it must also be proved that such negligence is the proximate cause of plaintiff's injury (Chattanooga Light & Power Co. v. Hodges, 109 Tenn. 331, 70 S.W. 616 (1902)), that neither a school nor its instructors are insurers of the safety of its students (Segerman v. Jones, 256 Md. 109, 259 A.2d 794 (1969)), and that a private school's athletic instructors are required only to exercise that degree of care which a reasonably prudent man would exercise under the same or similar circumstance (see Proehl, Tort Liability of Teachers, 12 Vand.L.Rev. 723, 739–40 (1959)). However, it is further observed that all of these propositions as well as the applicable law on the defenses of contributory negligence and assumption of risk were fully and accurately explained in the jury charge.

As is not unusual in such cases, the difficulty here is not as much in ascertaining the controlling legal propositions

as in determining their applicability to the established facts. In Rodriguez v. Brunswick Corp., 364 F.2d 282 (3rd Cir. 1966), plaintiff was injured while attending a private school operated by the defendant. In affirming judgment entered on a verdict for the plaintiff, the court stated (p. 284):

"The jury could have found, therefore, that defendant supplied but one instructor for twenty-four men working in teams of six, that it placed each team in competition with the other, that it totally disregarded the differences in the extent of each man's knowledge and skill, that its instructor himself held down the hook and saw others do the same thing, thereby encouraging by his example and by his silence the repetition by the competing students of the dangerous act. Negligence is the failure to exercise due care, and this means due care under the circumstances of the particular situation. A teacher's superiority in knowledge and experience imposes responsibilities in his dealing with students which become an inherent element in measuring his compliance with the due care which is required of him. A teacher may not, either by express instruction, or by his own example or his permission to others, teach a student to act in a manner which is unnecessary in the process of instruction and dangerous to his safety."

Circumstances also readily analogous to those presented by the case before us are to be found in Brigham Young University v. Lillywhite, 118 F.2d 836 (10th Cir. 1941). Plaintiff had there brought suit for damages resulting from personal injuries incurred as a result of an explosion in a chemical laboratory experiment, while she was a duly enrolled student at the University. The plaintiff therein charged that she was inexperienced in chemistry and chemical reactions and of the materials required in performing the experiment, that such chemicals were in fact highly dangerous, that her instructor failed to warn of the danger in the performance of the experiment and that the defendant "failed to supply proper supervision, and that the defendant was negligent in the conduct and operation of the laboratory in which the experiment was performed, in that it permitted the instructors in charge of the chemistry laboratory to leave said laboratory while plaintiff was engaged in performing the experiment." Speaking for the majority of the court in an opinion affirming a judgment for the plaintiff, Judge Murrah stated that in that case, where it was not disputed that the instructor was a paid member of the defendant's faculty and was acting within the scope of his duties at the time of the accident, the general rules of agency and tort liability have application (118 F.2d at 843).* In the present case the instructions of the District Judge to the jury and his opinion filed with the order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial are properly predicated on that basis as to the duty owed by the defendant to the plaintiff as a student in its school.

The defendant herein, of course, does not suggest that it owes no duty to its students. Among the obligations which a private school must as a matter of law assume, and which the defendant herein

* See also Marques v. Riverside Military Academy, Inc., 87 Ga.App. 370, 73 S.E. 2d 574 (1952), wherein plaintiff, a paying student at defendant's private school, was while engaged in an athletic activity struck in the head and injured by a discus thrown by another student. The court stated (73 S.E.2d at p. 577):
"the alleged negligence of the defendant in supervising the activity of discus throwing, so as to prevent injury to its cadets therefrom, does not appear to have been such negligence as the plaintiff could have known of and so avoided, or may have been an unforeseen risk which he could not be said to have assumed. All questions as to diligence and negligence, including contributory negligence and what negligence constitutes the proximate cause of the injury complained of, are questions for a jury, except in plain and indisputable cases."

at least inferentially agrees it assumed, is the single duty of exercising reasonable care in providing supervision, instruction and in the conducting of its activities. However easy it may be to assign or to recognize the existence of that obligation, there nonetheless remains the difficult task of providing standards against which to apply the private school's conduct in order to determine whether a breach of the obligation has occurred. The voluminous record before us abundantly demonstrates the zeal with which the parties attempted a delineation of such standards, and the charge to the jury and opinion on the alternative motion demonstrate the attention accorded this ascertainment by the District Judge. Both parties and the trial court obviously recognized, as we do, the impossibility of establishing precise criteria in this regard, and we specifically refrain from decreeing that, for example, a wrestling class at the eighth grade level must be restricted to a given number of pupils, that no more than one match can be adequately supervised by a single instructor at one time, that to be satisfactorily qualified a wrestling coach must have had any particularly stated training and experience, that fellow students cannot properly referee an eighth grade wrestling match, that a weight difference between the youthful participants in a wrestling match of from eight to thirteen pounds is (or is not) evidence of negligence in their matching, that plaintiff should not have been permitted (or required) to engage in two matches with only a seven minute rest period, or that any of the many other factual claims which were at issue in the trial court could be individually determinative. Indeed, proof of a failure in any such area would not in and of itself establish a breach of duty, because the defendant did not owe a duty to plaintiff, for example, to match him only against opponents of exactly his own weight. However, evidence of what was actually done in each of these areas was properly received as relevant to the issue as to whether defendant breached its three pronged but single duty to provide proper wrestling instruction and supervision and to properly conduct that activity.

We conclude that the record provides adequate standards against which the jury could compare the quality of the instruction, supervision and conduct of activities provided by the defendant in order to determine whether reasonable care had been exercised by the defendant in the premises. We hold that a question for jury determination was created by the evidence, and that the verdict of the jury which necessarily finds a lack of reasonable care in the premises on the part of the defendant should not be disturbed.

Affirmed.

CELEBREZZE, Circuit Judge, (concurring).

I have significant reservations as to the sufficiency of the evidence of negligent supervision and control by the Appellant of the usual wrestling activities of the Appellee and his classmates. Most of the evidence indicates that the Appellant acted well within the bounds of reasonable care in the execution of its teaching and coaching responsibilities. However, the evidence (1) that the Appellee and his classmates were instructed in a maneuver which was not generally recognized and approved of by qualified experts for young men of the Appellee's training and (2) that more adequate training by the Appellant might have avoided the concededly dangerous and improper somersault type execution of the "agura" alleged to have been made, is sufficient to support the jury's verdict that the Appellant acted negligently in discharging its duties to the Appellee.